VAN BOGART v. VAN BOGART.

1. **Practice in the Supreme Court:** EVIDENCE. The admission of immaterial evidence in a case triable *de novo* in the Supreme Court does not constitute ground for a reversal.

2. ———: TRIAL DE NOVO. An agreement of parties at the appearance term to try a case upon written evidence, supersedes the necessity of a motion and order for such trial.

3. **Homestead:** ABANDONMENT: ABSENCE. Mere absence from the homestead does not prove an intention of abandonment, but is a circumstance to be considered with others in arriving at the intention of the parties.

*Appeal from Fayette Circuit Court.*

SATURDAY, JUNE 16.

ACTION to foreclose a mortgage. The defendant, Alphia Van Bogart, avers that the premises, at the time of the execution of the mortgage, were her homestead; that she was then a married woman, and that the mortgage was not signed by her husband. Decree for plaintiff. Defendant appeals.

*Rickel & Clements*, for appellant.

*C. H. Miller, Joseph Hobson* and *Ainsworth & Hobson*, for appellee.

ADAMS, J.—The appellant complains of the admission of certain evidence on the ground that the same is immaterial.

**1. PRACTICE in the supreme court: evidence.** However immaterial we might regard it, the case would not be reversible on account of its admission if the case is triable *de novo*. It would be our duty to simply disregard it and affirm or reverse as should seem to be required by the evidence properly in the case.

As to whether the case is triable *de novo* or not, it may be said that the abstract shows that the parties at the appearance term agreed to try the case upon written evidence, and it was so tried. Such agreement, we think, superseded the necessity of a motion and order to the same effect. We think, therefore, the case is triable *de novo*.

**2. ——: trial de novo.**

.The question in the case is as to whether the defendant had abandoned the premises as a homestead at the time the mortgage was executed. Upon this point we think it may be said in the first place, that she was not occupying the premises at that time as a home. It does appear, indeed, that she was at that time staying in the house. But we think that she was there as a visitor. The house at that time was occupied by the plaintiff. The defendant in speaking of going there said: "I went to Bogart's" (plaintiff's). This implies that the place was Bogart's home, and in going there she went to his home

His testimony on the point is as follows: "She had a difficulty where she was and came over there as a visitor. I had the place rented for one year."

We come now to inquire whether she had previously abandoned the premises as a homestead. It is well settled that mere absence would not prove such intention. Long continued absence, if unexplained, would be a circumstance tending to prove it. The defendant had been absent about twenty months. Her husband left the premises about the same time, and does not appear to have returned. We do not think that the absence of defendant and her husband would go far toward proving abandonment. There is other evidence, however, which to our mind is of a controlling character. We think she must be considered as having abandoned the premises by reason of what she said at

**3. HOME-STEAD: abandonment: absence.**

the time of the execution of a former mortgage, provided she said what the testimony of one of the witnesses tends to prove.

The mortgage in suit was given to enable the defendant to borrow money to discharge a mortgage on the same premises given to one Chambers. At the time the Chambers mortgage was given, it is claimed that the defendant declared an intention not to return to the premises to live. This, it appears, was in the winter of 1872 and 1873, about a year before the mortgage in suit was given. The testimony as to her declaration is that of one Rogers. He appears to be wholly disinterested, and the circumstances are such as to entitle his testimony to great credit. He was employed to examine the title and advise Chambers as to whether the defendant could make a valid mortgage in the absence of her husband. The title was in her and the whole question depended upon whether the premises were her homestead. A conversation was held by Rogers with her on the point, and what she said was made a turning point in the advice given by him to Chambers. Rogers' testimony is as follows: "I acknowledged the Chambers mortgage in the winter of '72. Chambers took me one side and desired me to see whether she was capable of making a mortgage. I looked up the title and thought it all right until Chambers said that she had a husband who was away from her. I ran over the law, and at Chambers' request, told her that I did not think a mortgage would be good without her husband joined. She said that it was her land * * * * *and that she was not living upon it and did not intend to.* I then told her that under the circumstances I thought that the mortgage would be good, and it was executed." This testimony is credible, not only on account of the circumstances calculated to fasten the facts in Rogers' mind, but because the defendant does not clearly dispute it. She said: "I think there was something said about it being a homestead, but I don't remember what it was."

Taking then the testimony of Rogers to be true, as we think we must, the defendant said that she did not intend to

live upon the land. We have no doubt, therefore, that the Chambers mortgage was valid. The premises, having once lost their homestead character, could not regain it by simple intention on her part, if there was any, to return and occupy them without actually doing so.

AFFIRMED.