## W. D. CLAPP v. J. A. GREENLEE, Appellant.

**Rescission:** DEFENSE OF WANT OF DAMAGE. It is no defense to *a bill to rescind a deed for mistake* as to the subject-matter, that the tract actually conveyed is worth as much as the one plaintiff contracted to buy.

OFFER AND TENDER. It is no defense to *a bill to rescind a deed for mistake*, as to the subject-matter, that plaintiff allowed the land to go to tax sale and had mortgaged it, where the complainant tendered a re-conveyance free from incumbrance.

**Laches:** TENDER HELD SUFFICIENT. A suit to rescind a deed for mistake in the subject-matter is not barred by laches, where the transaction took place in 1887, and plaintiff did not discover that he had received the wrong land until 1890, and, after fruitless negotiation with defendant for settlement, brought action in April, 1891, for fraud, and did not discover the mistake until defendant filed his answer, in October, 1891, and amended the complaint in the following November, so as to seek a rescission for the mistake.

ELECTION OF REMEDIES: *Fraud and mistake.* The beginning of an action for fraud in an exchange of land is not an election to affirm the contract, which will prevent plaintiff, on subsequently discovering that there was no fraud, but a mistake as to the tract which he was to receive, from amending the complaint so as to seek a rescission for such mistake.

STATUTE OF LIMITATIONS: *Discovery.* A suit to rescind for mistake is not barred by limitations, though not brought within the statutory time, if plaintiff did not discover the mistake until one month before bringing the suit.

**Equity Suit:** OFFERING EVIDENCE WITHOUT NOTICE. Where a case was ordered to be heard on depositions, and the court in its discretion allowed one party, without notice to the other, to introduce documentary evidence, it was error to refuse to allow the latter to rebut it.

**Appeal:** TRIAL DE NOVO—OBJECTIONS BELOW: *Laws of sister state.* An equity cause was set down for hearing on depositions. The court allowed defendant to introduce the statutes of Nebraska to

show that the action was barred. It refused plaintiff leave to rebut this. *Held*, In view of the fact that plaintiff prevailed, and of the presumption that the court below did not commit error, involved in refusing such rebuttal, it will be the theory of the decision on appeal, that the offer of statutes was disregarded. If this be not so, this court, in view of the fact that rebuttal was not permitted, will exercise the right of excluding such evidence, even as the district court might have done, and this though its admission below might have been discretionary.

*Appeal from Keokuk District Court.*—HON. D. RYAN, Judge.

THURSDAY, JANUARY 21, 1897.

ORIGINALLY, this was an action at law to recover damages from defendant for certain false and fraudulent representations made by him with reference to some Nebraska land, which he exchanged with plaintiff for some land in Iowa. The defendant answered, denying that he made any false or fraudulent representations regarding the Nebraska land, and further pleading that the representations he made were not fraudulent, but made through mistake as to the tract of land which he in fact owned and traded to plaintiff. Defendant also pleaded a counter-claim, based upon certain false and fraudulent representations made by plaintiff concerning the Iowa land. After the filing of the answer the plaintiff amended his petition, and asked for a rescission of the contract of exchange by reason of mistake as to the subject-matter. In this amendment he offered to execute a deed to defendant re-conveying the Nebraska land to him free and clear of all incumbrances, and asked that the defendant be ordered to re-convey the Iowa land to him, and, if this could not be done, then that he have judgment for his damages, as prayed in his original petition. Thereafter plaintiff filed a motion to transfer the cause to the equity docket, which motion was

sustained, and defendant excepted. In answering the amendment to the petition, defendant averred that it was impossible for him to rescind, because he had conveyed the Iowa land to a good-faith purchaser. He further alleged that the Iowa land had much increased in value since the exchange was made, while the Nebraska land had increased but little, if any, and that it would be a hardship to now decree a rescission. Defendant also pleaded that the contract of exchange was made in the state of Nebraska, where both parties were at the time living, and that plaintiff's cause of action is barred by the statute of limitations of that state. The statute relied upon is pleaded by the defendant in his answer. Afterwards defendant filed an amendment to his answer, in which he alleged that plaintiff is not the owner of the Nebraska land; that the same had been sold for taxes to one A. E. Hunt, who was, at the time of the commencement of this suit, the owner of the real estate deeded to plaintiff. He further averred that, after receiving the Nebraska land, plaintiff executed a mortgage thereon, which had not been satisfied at the time this amendment was filed, and he relied upon these facts to defeat plaintiff's suit for rescission. Plaintiff also amended his petition by stating that he did not discover that the Nebraska land for which he traded was not the same as that pointed out to him by defendant at the time of the exchange, until June, 1890, and that he then wrote to defendant regarding the matter, and asked him to make it right; that defendant at first promised to do so, and held out that he would adjust the matter amicably, until about November 1, 1890, when he refused to do so. After defendant had filed his amendment to his answer, pleading plaintiff's inability to rescind, plaintiff replied thereto by stating that he had fully redeemed the Nebraska land from tax sale, and held a deed

thereto from Hunt, the purchaser at the tax sale, a copy of which deed he attached to the reply. He also pleaded that he had full power and ability to re-convey the Nebraska land, free and clear of all incumbrances, to defendant, should a decree of rescission be granted, and that he could fully restore to defendant the real estate which the defendant deeded to him, should the court so order.

The cause on the issues thus joined was by the court set down for hearing on depositions, and on the sixteenth day of December, 1892, was submitted to the court, to be argued in writing and decided in vacation as of the term at which it was submitted. Afterwards, and in May, 1893, the court rendered a decree finding the equities to be with plaintiff, and ordering a rescission of the contract, and directing each party to make a deed to the other of the land he had received in exchange, by the first of the next term of court, and that all parties having any interest in the land be brought in at this next term of court, in order that their rights may be adjudicated; and the cause was continued for such other or further decree or judgment as might be necessary. The record recites that, on the twenty-seventh day of September, 1893, the plaintiff in open court tendered deeds and abstracts, with release of mortgage appearing unsatisfied, and offers to record said release. And on the same day plaintiff filed a motion to re-submit the cause in which he alleged that he was ready and willing to make rescission on his part, and that the defendant was unable to rescind; and he asked that the cause be re-submitted, in order that the court might determine the amount of damages to which he was entitled; and he further asked for an order to take additional evidence on the question of damages. This motion was sustained, and on the twenty-third day of October, 1894, the cause was re-submitted on the evidence

originally offered and other additional evidence taken on this second submission. Thereafter, and before final decree, plaintiff amended his petition, in which he alleged that he had paid taxes on the Nebraska land for the term of seven years, amounting to one hundred and twenty-two dollars and twenty-four cents, in order to keep himself in position to rescind, and he asked that the amount so paid by him be allowed as damages from defendant. Defendant also amended his answer by stating that, in the exchange, he paid plaintiff two hundred and fifty dollars in cash; that amount representing the difference between the agreed values of the property exchanged. He also pleaded that the Iowa lands were sold under a decree of foreclosure rendered upon a mortgage existing upon the land when he received it from the plaintiff, and he asked that, in fixing the difference in value of the Iowa and Nebraska lands, defendant have credit for the sum for which the Iowa land sold on execution, and the "boot money" paid by him. Thereafter, and on the twenty-ninth day of June, 1895, the court rendered a further decree, finding that the defendant could not comply with the order of rescission, and that plaintiff had tendered him (defendant) a good and sufficient deed for the Nebraska land, and had paid the taxes claimed by him; and the court ordered that plaintiff have judgment for the value of the Iowa land, less the amount of incumbrance which existed thereon at the time of the exchange, and for the taxes paid by him on the Nebraska land. The court also found that the value of the Iowa lands at the time of the exchange was six thousand dollars, that the incumbrance thereon amounted to three thousand five hundred and seventy-six dollars and thirty-three cents, that defendant had paid plaintiff two hundred and fifty dollars as "boot money," and that plaintiff was entitled to interest at the rate

of six per cent. on the value of the land he conveyed
to defendant, less incumbrance and "boot money," to
which there should be added the one hundred and
twenty-two dollars and twenty-four cents taxes paid
by plaintiff; and judgment was ordered for plaintiff
for the sum of three thousand two hundred and sev-
enteen dollars and sixty-one cents and costs, and it
was further ordered that, upon payment of this sum,
defendant should be entitled to have and recover from
plaintiff a deed for the Nebraska land, with tax
receipts showing all taxes, up to and including the
year 1893, fully paid. The court further ordered that,
if plaintiff failed to do so, he should not receive or
enforce the collection of any part of the judgment.
It also decreed and ordered that, upon compliance
with the decree by plaintiff, and a failure of defendant
to satisfy the judgment within sixty days from July
1, 1895, plaintiff might elect to retain the Nebraska
land by crediting the value thereof, which was found
to be one thousand six hundred dollars, and the taxes
paid by him thereon,—in all, one thousand seven hun-
dred and twenty-two dollars and twenty-four cents,—
upon the judgment against the defendant; and the
cause was continued for further orders and the
enforcement of the decree. Thereafter, the plaintiff
filed a motion to confirm the decree and to enter judg-
ment thereunder for the value of the land, in which
he alleged that he elected to retain the Nebraska
land and credit the value thereof upon the judgment
against defendant, as provided in the decree last
mentioned. He further averred that he had fully
complied with the decree on his part by delivering to
the clerk a deed to defendant for the Nebraska land,
an abstract showing the same to be free and clear of
incumbrances, and tax receipts showing payment of
all taxes, and, having complied with all the require-
ments on his part, he asked that the decree be affirmed,

and judgment entered thereunder. He further stated that the time had passed which had been granted defendant for satisfying the judgment, and that he elected to retain the Nebraska land, and give the credit therefor on the judgment, as per the order of the court. Accompanying this motion were the deed and tax receipts referred to. This motion was submitted, and the court found the recitals therein to be true, and ordered that the decree of June 29, 1895, be confirmed, and that there be credited upon the judgment the sum of one thousand, seven hundred and twenty-two dollars and twenty-four cents, in accordance with plaintiff's election. To each and all of these orders, decrees, and judgments the defendant excepted, and now appeals to this court.—*Affirmed.*

*C. H. Mackey* and *Woodin & Son* for appellant.

*Raney & Simmons* and *C. M. Brown* for appellee.

DEEMER, J.—The unusually long statement preceding this opinion seems to be necessary to properly understand the questions presented for our determination. The exchange of land referred to in the pleadings was made in Nebraska, on or about the nineteenth day of April, 1887, and it is practically undisputed that the parties made a mistake as to the subject-matter of the trade. The plaintiff and defendant went to see the Nebraska land which defendant claimed to own, it being the west one-half of section No. 15, in township No. 2 N., of range 14 W. The defendant, by mistake, pointed out the east half of the section as his land, and plaintiff made the trade, believing that he was to receive the east half of the section in exchange for his land in Iowa. The east half of the land had a lake of living water, fed by underground springs, which was thought

to be valuable by the parties.   There are no water privileges on the west half.   There are some other things connected with the land which made the east half the more valuable of the two tracts.   Some of the witnesses place the difference in value at one thousand dollars.   Plaintiff did not discover the mistake until June, 1890, when he went to improve the land. Some correspondence then passed between the parties with reference to the matter, but no adjustment was had, and then plaintiff commenced his suit, filing his original petition on the first day of August, 1891.   Defendant claims, and introduced evidence to show, that one tract of Nebraska land was as valuable as the other, and that, if there was any difference, it was in favor of the west half of the section; and he insists that, if this be true, plaintiff is not entitled to rescind.   It is likely true, that proof of such facts would be a complete defense to an action at law for fraud.   But it is clear that it is not sufficient to defeat an action for rescission based upon mistake as to the subject-matter.   Plaintiff had the right to receive just what he contracted for, and, if there was a mistake as to the subject-matter, then there was no meeting of the minds,—no contract between the parties.   Under such circumstances a court of equity will, in a proper case, declare a rescission of the contract, although no damage would have resulted to plaintiff had he been content to abide by the trade.   It is not a question of comparative values, but of mistake in the subject-matter, which invalidates the transaction.   No citation of authorities is needed to support so elementary a proposition. It follows, then, that plaintiff is entitled to a rescission of the contract for mistake as to the subject-matter unless there be something else in the case which defeats his action.   Defendant contends that plaintiff is not entitled to rescission, because he

allowed the Nebraska land to go to tax sale, and also incumbered it with a mortgage, after he received the deed therefor. It will be noticed that plaintiff, in his petition and amendments thereto, offered to re-convey the Nebraska land, free and clear of all incumbrances, to the defendant, if the court so decree. As the suit was properly in equity, it was not incumbent on plaintiff to do more than make this offer. The court could, by proper orders, protect the defendant; and this it did in the decrees rendered. A statement that plaintiff was ready and willing to furnish and convey a clear title to defendant in the event a rescission was declared, was all that was necessary. The rule is different in actions at law, but this, as we have said, is not a law suit. *Montgomery v. Shockey*, 37 Iowa, 107; *Seymour v. Shea*, 62 Iowa, 708 (16 N. W. Rep. 196); *McCorkell v. Karhoff*, 90 Iowa, 545 (58 N. W. Rep. 913); *Taylor v. Ormsby*, 66 Iowa, 112 (23 N. W. Rep. 288); *Binford v. Boardman*, 44 Iowa, 53. It is said, however, that plaintiff did not, in fact, tender a deed and proper evidence of a clear title to the Nebraska land, in accordance with the orders of the lower court. We think, however, that the record does show, not only a willingness on the part of plaintiff to restore to the defendant the Nebraska land free and clear of all incumbrance, but an actual tender, not only of a warranty deed, but a deed from Hunt, who held the tax title on the land, a release of the mortgage executed by plaintiff thereon, proper evidence that all taxes had been paid, and an abstract of title showing the land free and clear of all incumbrance. The originals of some of these papers have been filed in this court for inspection, and we find them to be as appellee claims. Moreover, the defendant did not exercise the election he had to take the Nebraska land. On the contrary, he refused to perform that part of the decree which entitled him to a re-conveyance,

and compelled plaintiff to elect to take the land and credit the value thereon as fixed by the court upon his judgment. We think the tender and offer made by the plaintiff was sufficient.

II. Defendant claims that plaintiff's right of action is barred by his laches. The evidence shows that plaintiff did not discover that he had received a deed to the wrong land until June, 1890. He then had some negotiations looking to a settlement with the defendant, but these amounted to nothing, and he then, in April, 1891, commenced his action at law to recover damages for fraud. He did not learn of the mistake until defendant filed his answer, on October 31, 1891. On the sixteenth day of November following, the plaintiff filed an amendment to his petition, asking for rescission on the ground of mistake. We do not think there was such delay after the discovery of the mistake as defeats him of his remedy. It is true that unreasonable or inexcusable delay on the part of him who has the right to rescind, will amount to a waiver, and that one who has the right to repudiate must do so within a reasonable time after he has knowledge of the existence of the cause, or sufficient knowledge to put him upon inquiry as to the fraud, or mistake. But we think this case is barren of such facts as ought to defeat plaintiff on the ground of delay in proceedings.

III. It is also claimed that plaintiff, by commencing his action at law, elected to stand by the contract, and that he cannot be allowed to plead mistake. This contention is squarely answered by the case of *Smith v. Bricker*, 86 Iowa, 285 (53 N. W. Rep. 250), and we need give it no further attention.

IV. Defendant also claims that the suit is barred by the statute of limitations. The parties resided in Nebraska at the time the contract was made, and the

exchange was consummated in that state.  Defendant pleads the statutes of the sister commonwealth in bar of plaintiff's action, and claims that the action was barred within four years from the time the exchange was made.  The record with reference to this matter, is somewhat peculiar.  On the twenty-third of January, 1892, an order was made that the cause be heard on depositions.  On the sixteenth day of December, of the same year, the cause came on for hearing, and each party offered and introduced the depositions he had taken.  Up to this time no notice had been given by defendant that he intended to introduce the statutes of the state of Nebraska.  At the time of the introduction of the depositions, defendant produced one C. H. Mackey, as a witness, and proposed to examine him orally.  Thereupon plaintiff objected, because the case was set down for trial on depositions, and oral evidence was inadmissible.  The court made this order upon the objection:  "Taken, subject to objection, to be determined with the case."  The witness thereupon identified a certain book purporting to be the Compiled Statutes of the State of Nebraska.  Defendant then offered certain sections of this book, with reference to the statute of limitations, in evidence.  His offer was of sections 5–16, inclusive, found on pages 853–855.  To this book the plaintiff offered objections, and the same ruling was made by the court that it made upon the previous objections to Mackey's evidence.  It may be well to state that, before the cause was called for hearing, and on the ninth day of December, the plaintiff filed a motion for an order giving him fifteen days in which to file rebutting testimony, based upon the ground that no time was fixed within which such evidence should be taken, and upon the further ground that plaintiff had never had any notice of the filing of defendant's depositions.

This motion was supported by affidavits, showing that certain evidence in rebuttal was in existence, and that no notice was ever given plaintiff of the filing of defendant's evidence. This motion was overruled the day the cause was called for trial. After the submission of the case, and while it was still in the hands of the court, the plaintiff, on the twenty-first day of February, 1893, filed a motion to set aside the submission, for the reason that the case was triable on depositions only, and that, at the time of the submission, and after the court had refused a continuance asked for by plaintiff, the defendant introduced certain documentary and parol evidence; this being the evidence of Mackey and the Nebraska Statutes, before referred to. We do not find that any ruling was ever made upon this motion, unless it be comprehended in some of the decrees rendered by the court below. But, from the facts found and the decrees as entered, it appears to be quite certain that the court, in considering the case and making the decrees and orders it did, virtually sustained plaintiff's objections to the testimony of Mackey and the statutes of the State of Nebraska, although it must be conceded that no such order was expressly made of record.

At the time of filing the motion to set aside the submission, the plaintiff filed an amendment to his petition to conform it to the proof, in which he alleged that the defendant became a non-resident of the state of Nebraska in January, 1889, and that he has ever since been such non-resident, and that the statute ceased to run at the time the defendant left the state where he formerly resided. The plaintiff claims in argument that, had he been allowed to do so, he could have shown by competent proof that by the statutes of the sister state that their operation is suspended during the time of the defendant's

absence from that state. He further contends that there is no showing that the laws of Nebraska, with reference to absence from the state, are not the same as in this state, and that, in the absence of evidence, they are presumed to be the same; and he finally insists that the amendments to his petition relate back to the time of the filing of the original, and that his suit was commenced in time. We do not find it necessary to pass upon but one of these claims. If we be mistaken in our view of what the court held with reference to the evidence of Mackey and the Nebraska statutes, it is nevertheless true that the case is triable here *de novo*, and we are to consider only such evidence as we believe to be offered at a proper time, and competent and relevant to the issues. Now, while the lower court might, in the exercise of a sound discretion, have allowed this evidence with reference to the statutes of limitations to be introduced orally, and without notice to the plaintiff, yet in view of the time at which it was offered, it should not have been received at the time it was offered without allowing the plaintiff an opportunity to rebut it. No notice had been given plaintiff previous to the hearing, that defendant would introduce this documentary evidence; and the same may be said with reference to the tax deed to Hunt, and the mortgage executed by plaintiff on the Nebraska land; and no effort was made to take the deposition of the witness Mackey before the day of trial. As we understand the practice in such matters, it is incumbent on either party desiring to offer documentary evidence, where the case is ordered to be submitted on depositions, to give notice thereof to the opposite party; and while the court may, in the exercise of a proper discretion, permit such evidence to be offered at the trial, and may also allow oral testimony to be

taken, yet it ought to allow the other party to rebut such evidence when it is received. Presuming, as we must, in favor of the regularity of the proceedings of the trial court, it follows that he must have sustained the objections to the evidence now under consideration; else he would have permitted plaintiff to have offered evidence in rebuttal. But, as we have already said, if this be not true, we are constrained to hold, in view of the record made, that such evidence can not be considered on this appeal, for the reason that the objection to the evidence should have been sustained. It is well settled practice for trial courts, in equity cases, to make no ruling on objections to evidence, and the failure of the court to do so in this case is not unusual. The case comes to us with the objections interposed by counsel in the record, and we make such rulings thereon as ought to be made. It follows, then, that we cannot consider the Nebraska statutes, and must look to the law of this state, which is presumed to be the law of Nebraska, to determine whether the action is barred. The action is not barred under our law, for two reasons: *First,* because the plaintiff did not discover the mistake until a short time before he filed ·his amendment to the petition; *second,* because the undisputed evidence shows that defendant removed from the state of Nebraska in January, 1889, and has since been absent therefrom. The running of the statute is suspended during the time the defendant was absent from Nebraska. The action was not barred here, because sufficient time had not elapsed at the time the amendment to the petition was filed. Our conclusions on this branch of the case find some support in the following cases: *Gardner v. Trenary,* 65 Iowa, 646 (22 N. W. Rep. 912); *Sweet v. Brown,* 61 Iowa, 669 (17 N. W. Rep. 44); *Harlan v. Porter,* 50 Iowa, 446;

*Blough v. Van Hoorebeke,* 48 Iowa, 40; *Hasner v. Patterson,* 70 Iowa, 681, (28 N. W. Rep. 493); *Cook v. Smith,* 50 Iowa, 700; *Van Bogart v. Van Bogart,* 46 Iowa, 359; *Putney v. O'Brien,* 53 Iowa, 117 (4 N. W. Rep. 891).

V. Defendant contends that the judgment is for more than the amount claimed in the petition. The original petition asked judgment for one thousand five hundred dollars and interest. The judgment was for one thousand six hundred and seventeen dollars and sixty-one cents. One thousand five hundred dollars, with interest at six per cent. from August, 1891, amounts to more than the court awarded.

VI. Appellant also says there is no method of arriving at the judgment by any mathematical computation. We cannot agree with him in this. It is not necessary to set out the figures. Sufficient is it to say that we discover no error. The judgment and decree of the district court are right, and they are AFFIRMED.