MARTHA H. STAPLETON ET AL., Executrices, etc., Appellants, v. JAMES HAIGHT ET AL., Appellees.

**Deeds:** CANCELLATION: EVIDENCE. A deed founded upon consideration and which has been delivered will not be set aside, except upon satisfactory proof of fraud, accident or mistake; and then only when the party seeking cancellation returns, or offers to return, the consideration. Evidence held insufficient to warrant cancellation.

**Transactions between executor and legatee.** Conceding that transactions between an executor and a legatee will be closely scrutinized, yet they are not necessarily fraudulent; but in the instant case the relation is not shown to exist except in a perfunctory measure.

**Deeds:** CANCELLATION: ESTOPPEL. Where the rights of a party arise under a will he will be held to a knowledge of the conditions and limitations of the bequest, and to those matters incident to the due course of administration; and he cannot be heard to plead ignorance thereof in seeking to avoid a

conveyance of his rights in the estate in consideration for payment of his legacy.

**Deeds:** CONSIDERATION. A deed conveying the interest of a legatee in the estate upon the voluntary payment of the legacy by the grantee is supported by a sufficient consideration.

*Appeal from Des Moines District Court.*— HON. W. S. WITHROW, Judge.

THURSDAY, OCTOBER 17, 1907.

ACTION in equity originally commenced to construe a will. The case is stated in the opinion. The plaintiffs and certain of the defendants appeal.— *Reversed.*

*Seerley & Clark,* for appellants.

*Blake & Wilson* and *Power & Power,* for appellees.

BISHOP, J.— Henry Haight, late a farmer of Des Moines county, died intestate in 1888. His will, bearing date November 16, 1887, was duly admitted to probate, and the provisions thereof, as far as material to be considered are as follows: To his widow, Margaret E. Haight, he bequeathed the full control of all his real estate as long as she should live, also his personal property on the farm — whether in full title or for her use is not a question in the case. To each of his three sons by his first wife, he bequeathed a specific sum of money, to be paid " as the same can be made from the farm." To his daughter by his first wife, Margaret Cornick, he bequeathed the sum of $1,100, and provided that the same " should not be paid for ten years from this date without interest." To his children by Margaret E., who became his widow, he made provisions as follows: To his daughter Martha (who became Martha Stapleton), three hundred and twenty acres of land specifically described; to his daughter Jessie Dora, two hundred and forty-three acres of land specifically described; to

his son Henry C., " all my real estate provided he can pay
to his two sisters, Martha and Jessie Dora, the sum of two
thousand dollars each for their share of my estate above
described by the time they are thirty years old, without in-
terest, or if he should need a longer time with fair prospect
of making such payment then it shall be given him.  .  .  .
If he should fail to carry out and comply with these condi-
tions, I only will him the following lands "— specifically
describing the same.  This clause then follows:  " In case
of the death of my son Henry C. without heirs or children,
my will and desire is the one-half of all his portion of my
estate as willed to him shall be equally divided between his
two sisters Martha and Jessie Dora, and the other half shall
be divided *pro rata* among my other heirs," etc.  The widow
Margaret E. and the son Henry C. were named as executors,
and they qualified and took charge of the estate under the
will, and it appears that shortly thereafter they sold the per-
sonal property, and from the proceeds paid to the three sons
first named the amount of the bequest to them in full.

The record does not advise us of any further proceed-
ings or change in the situation of the estate, until in Decem-
ber, 1897, when Margaret E. Haight paid to Margaret Cor-
nick the sum of $1,100, and, in connection therewith, there
was executed by Mrs. Cornick a receipt as follows:  " Re-
ceived of Margaret E. Haight, executor of the estate of
Henry Haight, deceased, eleven hundred dollars, being the
amount in full coming to me from said estate."  At the
same time, and in the same connection, there was executed
by Mrs. Cornick and her husband a quitclaim deed, whereby
said parties "in consideration of one dollar quitclaim to
Margaret E. Haight all our interest in the following real
estate [describing the real estate of which Henry Haight
died seised] ; it being our intention to convey all our inter-
est in the estate of Henry Haight, deceased."  Matters thus
stood until the year 1904, when Henry C. Haight departed
this life, intestate.  At the time of his death he was un-

married, and left no children.    It seems to be conceded that he died without having paid to his sisters Martha and Jessie Dora any part of the moneys to be paid them under the provisions of his father's will.

Soon after the death of Henry C., this action was commenced by Margaret E. Haight, the said daughters, Martha and Jessie Dora being included among the defendants.    And it appears that such proceedings were had that on December 6, 1905, an interlocutory decree was entered, in which it was found that Henry C. Haight, at the time of his death, " was not the owner under the provisions of said will of a fee-simple estate, but that  .  .  .  [the real estate described in the will of the father] shall be owned as follows: .  .  .  one-twelfth by the plaintiff Margaret E. Haight, there having been conveyed to her by Margaret Cornick an undivided sixth of one-half," etc.    In February following, a final decree was entered, and therein was incorporated the provision of the interlocutory decree with respect to the share conveyed by Margaret Cornick to Margaret E. Haight. In the meantime, however, and on December 18, 1905, Margaret Cornick filed a petition of intervention, in which she asserted that she had not been served with notice or made a party to the action; that the deed from herself and husband to Margaret E. Haight was obtained by fraud, and was a fraud upon her rights; that it was without consideration and was executed with the understanding that it was to operate only as a voucher showing payment to her of the sum of $1,100 as provided for in her father's will.    And the prayer was that said deed be set aside and canceled, and that she be decreed to be the owner of and entitled to the one-twelfth interest in said estate, etc.    Notice of the intervention was not given, and no steps were taken under it until June 4, 1906, when the intervener amended her petition, setting forth that, since her original filing, Margaret E. Haight had departed this life, testate, and that in her will, which had been duly admitted to probate, Martha Haight Stapleton and

Jessie Dora Haight were named as her sole heirs, and that they had been duly appointed executrices of said will.   On .the same day Martha Stapleton and Jessie Dora Haight, as executrices, and in their own right as legatees under the will of their mother, appeared and answered the petition of intervention, denying that intervener had any rights, and asserting that their mother had in her lifetime paid to intervener $1,100 " for her interest in said estate, paying her own individual money therefor and receiving the deed " in question.   Trial was then had, resulting in a finding in favor of intervener, and awarding to her by a correction of the decree already entered the relief for which she prayed. It is from this finding and decree that the appeal was taken.

The foregoing somewhat lengthy statement of the situation as disclosed by the record has seemed necessary to a clear understanding.   As the parties acquiesce in the finding

1. DEEDS:
cancellation:
evidence.

of the court below to the effect that Henry C. Haight did not take title in fee under the will of his father, and, accordingly, that the real estate bequeathed to him should be distributed in accordance with the later provisions of such will — which provision is quoted by us above — it becomes apparent that when we have determined upon the effect to be given the quitclaim deed executed to Mrs. Haight, we shall have made disposition of the case.   The circumstances of the execution and delivery of the deed are to some extent the subject of controversy.   At the time of the death of her father, Mrs. Cornick resided in the State of Kansas, and her residence has since continued there.   After the lapse of ten years from the probate of the will, the subject of the payment of the bequest was taken up by correspondence; the initiative being taken by Mrs. Cornick in a letter to Mrs. Haight.   Both Mr. and Mrs. Cornick testified that an answering letter was received from Mrs. Haight, which letter had been lost, and neither could remember more of the contents than that Mrs. Cornick was

directed to go before the probate judge of the county and make proof of her identity. Each further testified that subsequently a registered letter came from Mr. Seerley, attorney for Mrs. Haight, and with it was inclosed a receipt and quitclaim deed for execution. Neither could remember the contents of this letter, and, being shown a typewritten copy of a letter (marked Exhibit 4), each denied recollection of having received such a letter. Each also admitted that some correspondence on the subject in hand was had between them and one John Carden, an uncle of Mr. Cornick, residing in Des Moines county. The letter from Carden, it was said, had been lost and in respect of the contents thereof, each testified that no reference was made in any way to the subject of a requirement for, or the execution of, a quitclaim deed by them. And Mr. Cornick testified in rebuttal that the letters contained no reference to a purchase by Mrs. Haight of their interest in the estate, nor was there mention made that there was no money in the estate, that if they would execute a quitclaim deed Mrs. Haight would sell cattle and buy their interest. It was admitted that the receipt and quitclaim deed were executed in the presence of the county clerk, and that the same were forwarded to Carden for delivery. Mrs. Cornick, in answer to a question, said that she understood the deed to be a receipt or voucher for the $1,100. Mr. Cornick did not attempt any explanation respecting the matter of his execution of the deed.

Now, as opposed to the testimony of the Cornicks, Mr. Seerley testified that he was attorney for Mrs. Haight, and that the subject of the legacy to Mrs. Cornick was talked over about the time of the expiration of the ten-year period. That shortly thereafter Mr. Carden called upon him, having a letter from the Cornicks requesting that he (Carden) call and see when the money could be paid over. " I told Carden that the ten years would be up in a short time, and that Mrs. Cornick ought to have her money, that there was no

cash in the estate, and that if she would transfer her rights
to Mrs. Haight that Mrs. Haight would sell sufficient prop-
erty of her own to pay Mrs. Cornick off.   Carden said he
would write to Mrs. Cornick, and he came back some time
later with a letter or postal card saying they were willing to
make a deed to Mrs. Haight.   I then prepared the deed and
receipt and mailed them to John Cornick. · Exhibit 4 is a
copy of the letter of transmittal.   It is the only letter I ever
wrote to the Cornicks.   Later on Mr. Carden brought me
in the deed and receipt, and I paid him the money."   The
letter (Exhibit 4) written by Seerley bears date December
31, 1897, was addressed to John Cornick, and reads as fol-
lows:   " We herewith inclose quitclaim deed to Margaret
Haight of such interest as you may have in the estate of
Henry Haight, deceased.   Please sign same, together with
receipt which we also inclose, and send to John Carden, no-
tifying Mrs. Haight at the time you send them so that she
may bring in the money."   Mr. Carden was called as a wit-
ness.   He is an old man, and, as he said, very forgetful.   It
must be said that his testimony was not altogether free from
confusion and inconsistencies, but on the whole it tended to
corroborate the evidence of Seerley.   In addition, he de-
clared that, as requested by Seerley, he had written to the
Cornicks, in substance, that if they would give Mrs. Haight
a deed she would sell what property she had and pay them.
And this latter statement finds corroboration in a letter
written by John Cornick of date December 30, 1897, in
which he says:   " Maggie and I are at P. O. on purpose to
receive quitclaim paper from John Seerley as promised by
card received of John Carden last Saturday," etc.   So, too,
on the day of the execution of the deed, Mr. Cornick wrote
Mrs. Haight as follows:   " Meet my uncle John Carden in
Burlington January 12.   We have just signed quitclaim
papers and sent them to Carden."   And Mrs. Cornick, at
the same time, wrote Mrs. Haight as follows:   " We re-
ceived those papers from your lawyer.   He said for us to

appoint a time for John Carden to receive the money.   We will appoint January 12.   Please be prompt," etc.   Jessie Haight testified that her mother obtained the money which was used to pay Mrs. Cornick by selling cattle, her individual property.

Such is the evidence.   And to our minds it does not furnish warrant for the decree in favor of intervener as entered, or for any relief.   A deed solemnly executed and delivered imports a verity.   Accordingly, it is not considered that there is any authority in the courts to set aside and hold for naught an instrument founded on consideration that has become a deed by delivery, except on satisfactory proof of fraud, accident, or mistake.   Pomeroy's Equity, section 119. Nor then unless the party seeking cancellation has returned, or offers to return, the consideration received.   *Clapp v. Greenlee,* 100 Iowa, 586; *Mullen v. Old Colony Co.,* 127 Mass. 86 (34 Am. Rep. 349).

It is not questioned but that the deed here being considered, if to be given full force according to its terms, was sufficient to invest Mrs. Haight with all the rights and interests which otherwise would have accrued to Mrs. Cornick following the death of Henry C. Haight.   Nor is it suggested by intervener that the situation presents a case of accident or mistake. The grounds of contention are two:   That the deed was procured by fraud; and that it was without any substantial consideration.   In view of the record, we think that the contention cannot be sustained on either ground.   Let us see what is the argument.   Counsel urge that the whole transaction was one between an executrix and a beneficiary, and the well-established doctrine that such transactions should be closely scrutinized is invoked.   Giving full recognition to that doctrine, it does not follow that dealings between an executrix and a legatee under the will are necessarily fraudulent or void.   But was the transaction here in question one between an executrix, as such, and a legatee under the will,

2. TRANSACTIONS BETWEEN EXECUTOR AND LEGATEE.

as such? We think not. To begin with, Mrs. Haight's position as executrix was in large measure perfunctory. There was no personal estate in her hands, and the only source from which money could be obtained to pay the legacy to Mrs. Cornick was from payments to be made by Henry C. Haight. And certainly there was no way open to Mrs. Haight as executrix to enforce such payments. So, too, judging from what appears, the prospects for receipt of such payments must have been doubtful, to say the least; and, following along down, it would seem that in fact no payment was ever made. This being true, it would seem to be conclusive that at the time of the transaction here in question there was neither right on the part of Mrs. Cornick to demand payment, or obligation on the part of Mrs. Haight to provide for and make payment.

Respecting the situation thus disclosed, it does not lie in the mouth of Mrs. Cornick to plead ignorance. Whatever rights she had arose under the will, and she must be held to a knowledge, not only of the conditions and limitations attached to the bequest, but of the matters and things incident to the due course of administration. But, aside from this, we think the evidence fairly makes it appear that as matter of fact she did know of the situation. In view of the testimony of Carden, the letters introduced, and the fact of the prompt and unquestioned execution of the deed, her conduct is not explainable on any other theory. We conclude that there is nothing in the record upon which a charge of fraud in connection with the procurement of the deed can be predicated.

3. DEEDS: cancellation: estoppel.

Accordingly, we have as the remaining question whether the deed was supported by any sufficient consideration. Only an affirmative answer to this question is possible. The money paid to intervener was the money of Mrs. Haight. There was no obligation resting upon her personally, and, as we have seen, there was existing no present obligation as executrix. As the condi-

4. DEEDS: consideration.

tions on which she would pay out of her own funds a sum of money to intervener equal to the legacy provided for in the will, she had the right to make such conditions or requirements as she chose. Intervener accepted the conditions, and Mrs. Haight paid the money. Surely argument is not needed here to make plain the fact of consideration. And even if a return of consideration would be availing under the circumstances of the case, there has never been a return or offer to return.

It follows from what has been said that the decree entered was error, and it is reversed, and the case ordered remanded, with instructions to dismiss the petition of intervention, with costs.— *Reversed.*