JOEL BROWN v. A. H. AITKEN AND ANNA M. AITKEN.

May Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, AND HASELTON, JJ.,
AND FISH, SUP. J.

Opinion filed October 14, 1914.

*Review—Exceptor Confined to Position Below—Contracts—Rescission—Materiality of Breach—Question for Jury—Rescission—Seasonableness—Recovery of Purchase Price by Vendee.*

On review, an exceptor may not raise a question that is not involved in his position below.

If a vendor of real estate, while the contract remains executory in whole or in part, breaks it in a material particular, the vendee may rescind it, and, in an action of assumpsit, recover whatever of the purchase price he has paid.

One who has bargained for a definitely described piece of land at a specified price, if tendered title to only a materially reduced quantity of the land, may rescind the contract and recover any money he has paid thereunder, but whether the reduction is material is usually a question for the jury.

In assumpsit to recover money paid by plaintiff as part of the purchase price of a village residence for which he had bargained with defendants at a specified price, where it appeared that plaintiff had rescinded the contract because defendants tendered him only a deed that made the west line of the premises run from the center of a large elm shade tree on the street to the center of a like tree on the bank of the river, while plantiff claimed that the contract covered the land just west of those trees and included them, it was error to direct a verdict for defendants on the ground that the claimed shortage was too slight to warrant a rescission, but that question should have been left to the jury.

A contract can be rescinded only within a reasonable time after the right to do so accrues.

Delay during the time the parties are negotiating for a settlement does not amount to a waiver of the right to rescind the contract involved in the negotiations.

In assumpsit to recover money paid by plaintiff on the purchase price of a village residence for which he had bargained with defendants in the fall of 1911, and of which he went into possession that fall, under the contract, having first made repairs thereon, and remained in possession until March 26, 1913, when he surrendered possession to defendants and brought this suit, where the evidence tended to show that about December 17, 1911, defendants tendered plaintiff a conveyance of a materially reduced quantity of the land covered by the contract, which plaintiff refused to accept, and defendants refused to tender any other conveyance; that on or about January 20, 1912, defendants sued plaintiff for the unpaid balance of the purchase price and were cast in that suit, which terminated in October or November, 1912; and that from the time defendants tendered said conveyance until this suit was brought the parties were trying to settle the matter, it was for the jury to say whether plaintiff's attempted rescission of the contract was seasonable.

ASSUMPSIT for money paid on the purchase price of real estate. Plea, the general issue. Trial by jury at the September Term, 1913, Franklin County, *Taylor,* J., presiding. The jury returned the special verdicts recited in the opinion, and the court directed a general verdict for the defendants and gave judgment thereon, to which the plaintiff excepted. The opinion fully states the case.

*McFeeters & McFeeters* for the plaintiff.

Plaintiff rescinded the contract, and by the delivery of the key surrendered possession of the property. *Henry* v. *Martin,* 39 Vt. 42. The question of a material breach should have been submitted to the jury. *Miller* v. *Benjamin,* 142 N. Y. 613; *Stokes* v. *Johnson,* 57 N. Y. 673; *Bryan* v. *Yates,* 7 Ga. App. 712; Williston's Wald's Pollock on Contracts, 326.

*C. G. Austin & Sons* for the defendants.

Plaintiff did not show a breach of the essence of the contract. The claimed shortage was too trifling to justify a rescission. *Ball* v. *Percival,* 3 Ky. L. Rep. 396; *Burkholder* v. *Farmers' Bank of Kentucky,* 67 S. W. 832, 23 Ky. L. Rep. 2449; *Martin* v. *Stone,* 79 Mo. App. 309; *Klim* v. *Sachs,* 92 N. Y. S. 107, 102 App. Div. 44; *Tepper* v. *Niemer,* 105 S. W. 896, 32 Ky. L. Rep. 407; *Williams*

v. *Smith Bros.,* 69 S. E. 480; *Weinheimer* v. *Ross,* 141 N. Y. S. 55,
80 Misc. Rep. 269; *Glock* v. *Howard & Wilson Colony Co.,* 43
L. R. A. 199, at pp. 204, 205 and 207; *Saunders* v. *Brock,* 35
L. R. A. (N. S.) 533, 79 Atl. 772.

POWERS, C. J.   In the fall of 1911, the plaintiff bargained
with the defendants' agent for the purchase of a house and lot
in Berkshire.   He paid down $50 and it was agreed that the
balance of the purchase price should be paid on delivery of
the deed or about January 1, 1912. · The plaintiff went into
possession of the property on or about November 1, 1911, and on
the 14th made a further payment on the purchase of $400.   The
action is assumpsit and is brought to recover the amounts so
paid.

The evidence tended to show that on or about December 17,
1911, Combs, the agent of the defendants who lived in Cali-
fornia, tendered the plaintiff a deed which made the west line
of the premises in question run from the center of a large elm
tree on the street to the center of a large elm tree on the bank
of the river.   The plaintiff declined to accept this deed, claim-
ing that it did not correctly describe the west boundary of the
lot, because the contract covered the land to the west of these
elm trees and included them in the sale.   The agent insisted that
the defendants could not convey the trees and the land specified,
because they had conveyed the land west of this lot to another,
and made the boundary a line from the center of one tree to
the center of the other.   No other deed was ever offered the plain-
tiff and he was at this time or soon after informed by the agent
that no deed covering land enough to include the trees would be
given.

The plaintiff continued in possession of the place, and on
or about January 20, 1912, the defendants sued him in general
assumpsit to recover the unpaid balance of the purchase price.
The suit terminated in this plaintiff's favor at the September
Term of Franklin County Court,—in October or November ap-
parently,—but the merits of the controversy were not determined.

The plaintiff held possession of the place until March 26,
1913, when he delivered the key of the house to the officer who
served the writ herein, who surrendered the key to the agent and
then made service.

The jury found by special verdicts that the contract covered all the land to a line westerly of the two elm trees; that the plaintiff, prior to the commencement of this suit, offered to pay the balance of the purchase price on delivery to him of a deed to such line; that the plaintiff vacated and restored the possession of the premises within a reasonable time after the alleged breach of the contract by the defendants; and that the plaintiff demanded the money paid on the purchase price before service of the writ in this case.

After these special verdicts were returned, the court ordered a general verdict for the defendants on the ground that the payments were voluntary and the plaintiff had failed to show a substantial breach of the contract by the defendants. In other words, the court ruled that the difference between the land called for by the contract and that covered by the deed was too small to warrant a rescission of the contract by the plaintiff. To this the plaintiff excepted. Both parties excepted to various rulings during the trial and both bring exceptions up for review; but the only questions briefed or considered are those hereinafter treated.

The plaintiff takes the position in his brief that the case shown by the record is one of rescission by mutual agreement; that the defendants accepted the key to the house, and disposed of the property to Metevier; and that these facts rendered immaterial all questions regarding the character of the alleged breach of the contract by the defendants and laches on the part of the plaintiff. There was some evidence tending to show a rescission by mutual agreement, though it did not go as far as the plaintiff claims. It did appear that Metevier had bought the place, and that he had been in possession since soon after the key was surrendered; but it did not appear from where he obtained his title,—whether from the plaintiff, or the defendants, or someone else. The trouble with the plaintiff's position on this question is that he did not make the point below. His position at the trial did not involve the question of rescission by mutual agreement at all; and for this reason, he cannot stand on the claim here.

The parties do not disagree as to the rule of law governing the point on which the trial court turned the case. It appears to be admitted that if a vendor of real estate, while the contract remains executory in whole or in part, breaks it in a material

particular, the purchaser may rescind it; and if he has paid the
purchase price or any part of it, he may recover it in an action
of assumpsit.  So one who bargains for a definitely described
piece of land at a specified price need not accept a materially
less quantity of land, but may rescind the contract and recover
any money he has paid under it.  This rule was the one adopted
by the trial court.  But that court, as we have seen, took the
view that the plaintiff had failed to give evidence tending to show
that the defendants' default went to the essence of the contract,
and ruled that, as a matter of law, the difference in land was
too inconsequential to give rise to a right of rescission.  With this
proposition we cannot agree.  While it must be admitted that
the evidence was rather meagre, it appeared that the trees were
large shade trees.  The place was a village residence.  Every-
body knows, and therefore it needs no proof to show, that such
trees add value and enjoyment to such a place.  The width and
length of the strip of land involved are not given, but some idea
thereof can be obtained from the record and it must have been
of some value.  Such questions are usually for the jury,—the
determination thereof being dependent upon the facts and cir-
cumstances of the particular case in hand.  So here the facts
are not of a sufficiently decisive character to warrant a court
in withdrawing the case from the jury.

The question is of such a nature that little aid in its solu-
tion is to be obtained from the cases.  The application of the
rule is, however, somewhat illustrated from the following:  In
*Klim* v. *Sachs,* 102 App. Div. 44, 92 N. Y. 107, it was held that
the fact that adjoining buildings encroached from one to three
and one-half inches on the property bought entitled the pur-
chaser to rescind the contract.  In *Floeting* v. *Horowitz,* 120
App. Div. 492, 104 N. Y. S. 1037, it was held that a shortage
of four and one-half inches in the frontage of the land bought
gave rise to a right of rescission on the part of the purchaser.
And in *Davis* v. *Scher,* (N. J.) 62 Atl. 193, it was held that the
misstatement of the number of rooms in a building in Newark
was so material as to justify a rescission by the vendee.  These
cases are not controlling, of course, but they show that the
question depends upon circumstances shown, and is for the jury.

It may be conceded that a trifling difference between the
land bought and that deeded would not afford a basis for rescis-
sion, and that a variance might be such that, if it affected the

situation at all, it would only give rise to a valid claim for a reduction of the purchase price, and that in some cases these questions would be so plain that they could be handled by the court; but the fact remains that the evidence here tended to show that the land and trees were of material consequence and the case was for the jury.

The defendants argue that even if the court was wrong in ordering a verdict on the ground stated, the judgment should be affirmed, because a verdict should have been ordered on the ground that the plaintiff had, by his conduct and delay, waived his right to rescind,—if he ever had one.

Here, again, the parties do not disagree as to the rule of law applicable. They agree that one entitled to rescind must do so within a reasonable time, and that this is usually a question of fact; and that where the question depends upon the length of time, alone, it may be a question for the court. The time taken by this plaintiff, standing alone, seems unconscionably long. He was entitled to a fair chance to consider the matter, and if, as Combs in effect admitted, he had done some work on the place before the defendants broke the contract, this was a fact entitled to consideration in making up his mind what it was best for him to do. But the length of time does not here stand alone. Other facts are for consideration. Unfortunately for the plaintiff, he did not offer evidence of his repairs on the barn and in bringing water to the place until his rebuttal, and it was excluded as out of time. But as suggested, Combs testified that the plaintiff "did some work" before he took possession, evidently meaning that he made some repairs on the place. A suit was brought against him which involved the contract and its binding force; and, giving the plaintiff the benefit he is entitled to on a motion for a verdict by the defendants, it was pending until November. Surely, this was a circumstance tending to excuse his inaction during that time, for a jury would be warranted in saying that he would not reasonably be expected to surrender possession, when the result of the suit might establish the contract and compel him to pay the balance of the purchase price. The situation was much like that in *Nealon* v. *Henry,* 131 Mass. 153, wherein it was held that where a defect in the title of the premises in question depended on a question which the vendor brought suit to test, the purchaser could await the result without waiving his right. Moreover,

Combs testified, in answer to a question as to what occurred between the time the plaintiff refused the deed and the time this suit was brought, that he tried to explain the situation to the plaintiff and his family, and tried to get a settlement. It is true that in another place in his testimony he said that negotiations with the plaintiff were ''brought to a head'' on January 20, or soon after that date. But it was for the jury to say which of these statements they would accept; and if they accepted the former, it was a circumstance to be considered in determining whether the rescission or attempted rescission was seasonable. Combs also testified to a telephone conversation with the plaintiff regarding a settlement. He says it was after this suit was brought; the plaintiff says it was before. It was for the jury to say which was right, and if they agreed with the plaintiff, consider the fact on the question of the effect of his inaction; for delay during the time the parties were negotiating for a settlement does not amount to a waiver of the right to rescind. *Clapp* v. *Greenlee,* 100 Ia. 586, 69 N. W. 1049; *Ward* v. *Marvin,* 78 Vt. 141, 62 Atl. 46.

Taken altogether, the record does not show a question so plain that it could be ruled as matter of law, and it was correctly submitted to the jury.

There is no occasion to interfere with the special verdicts, and the retrial will be restricted to the other questions involved.

*Judgment affirmed except as to the issues undisposed of by the special verdicts; as to them, judgment is reversed and cause remanded for retrial thereon. Let the plaintiff recover costs in this Court, since he prevails on both points.*