## Sterrett Enterprises, Inc. v. The Yankee Chapman, Inc., and I.V.O.W. Corporation

[499 A.2d 1152]

No. 82-363

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed July 19, 1985

*Divoll & Doores, P.C.*, Bellows Falls, for Plaintiff-Appellee.

*Keyser, Crowley, Banse, Abell & Facey*, Rutland, for Defendant-Appellant.

**Allen, C.J.** This case is an appeal from a judgment for breach of contract. In 1966 the defendant, The Yankee Chapman, Inc. (Yankee), entered into a long term lease with I.V.O.W. Corporation (I.V.O.W.) for the rental of a bowling alley in a shopping plaza. The lease prohibited Yankee from assigning the lease or subleasing the premises without I.V.O.W.'s written consent, which was not to be unreasonably withheld.

On September 3, 1976, Yankee agreed to sell the assets of the bowling alley to Clyde and Leona Sterrett (who subsequently formed Sterrett Enterprises, Inc.). The sale agreement stated that possession was "to be given as soon as details of lease is worked out between the 'Sellers' and landlaord [sic] and purchasers."

On October 8, 1976, after I.V.O.W.'s oral consent to an assignment of the lease, Yankee and Sterrett executed a contract of lease and sale. That agreement confirmed the original terms of sale, and provided for the lease of the business to Sterrett until the June 1, 1977, closing date. On October 8, Yankee also assigned its leasehold interest to Sterrett. That assignment contained a provision that Yankee would "procure any further necessary consent or assurance of title to the premises . . . specifically including the written permission of said I.V.O.W. Corporation attached hereto." I.V.O.W. had been expected to execute the consent at the same meeting, but failed to appear.

I.V.O.W. subsequently demanded certain changes in the lease before it would consent to the assignment. For the next two years, the parties conducted negotiations concerning the lease terms, but never reached final agreement. For the entire period the Ster-

retts remained in possession of the bowling alley and the closing date was repeatedly postponed.

In August, 1978, Yankee decided that I.V.O.W.'s consent was being unreasonably withheld. It demanded that Sterrett either complete the transaction without I.V.O.W.'s consent, or relinquish possession of the bowling alley. After receiving no response, on September 29, 1978, Yankee again wrote to Sterrett, repeating its demands, noting that Sterrett would forfeit its deposit should it not complete the purchase. Sterrett vacated the premises on November 1, 1978.

In December, 1979, Sterrett sued Yankee and I.V.O.W., seeking to recover its deposit and incidental expenses incurred while operating the bowling alley. Yankee crossclaimed against I.V.O.W., claiming that I.V.O.W.'s breach of its lease with Yankee rendered it liable for any damages incurred by Sterrett.

Following trial, the Bennington Superior Court awarded Sterrett $20,000 for the deposit, $3,154.26 for certain expenses, and interest thereon from November 1, 1978, against Yankee. Yankee was awarded the same amount against I.V.O.W. In addition, Sterrett was granted $3,510.90 plus interest against I.V.O.W. for certain repairs.

Upon appeal, Yankee contends that the court erred in finding a breach of its October 8, 1976, agreement with Sterrett, because I.V.O.W.'s consent to the assignment was unnecessary for Yankee's assignment to be valid. Yankee argues that since the trial court held that I.V.O.W. had, in fact, unreasonably withheld its consent to the assignment it could have validly assigned the lease without such consent. See, e.g., *Carleno* v. *Vollmert Tire Co.*, 36 Colo. App. 446, 450, 540 P.2d 1149, 1151 (1975). Because Yankee's assignment of the lease would have been valid, it contends, Yankee did not violate its October, 1976, agreement to assign its leasehold interest to Sterrett simply because it failed to obtain I.V.O.W.'s written consent.

■ Sterrett, however, contracted for a valid assignment of Yankee's lease, not for a lawsuit to determine its validity. In an unsuccessful effort to avoid a lawsuit it required the assignee to procure not only a "necessary consent" but also "the written permission" from I.V.O.W. Yankee then unconditionally refused to perform that condition, justifying rescission by Sterrett. *Rowell* v. *Town School District of Canaan*, 123 Vt. 350, 354, 189 A.2d 785, 789 (1963).

■ Yankee claims next that Sterrett waived its right to rescind the contract by its failure to act for three years. The right of rescission must be exercised within a reasonable time after discovery of the grounds therefor. *Evarts* v. *Beaton*, 113 Vt. 151, 154, 30 A.2d 92, 94 (1943). However, Yankee did not notify Sterrett until August 25, 1978, that it was unable to obtain I.V.O.W.'s consent to the assignment. Until that date, Yankee was involved in negotiations with I.V.O.W., to which Sterrett was occasionally a party. Periods during which settlement discussions are being conducted are not counted in determining whether an action is barred by laches. *Mogavero* v. *McLucas*, 543 F.2d 1081, 1083 (4th Cir. 1976); see *Brown* v. *Aitken*, 88 Vt. 148, 154, 92 A. 22, 24 (1914).

■ Sterrett vacated the premises on November 1, 1978, two months following receipt of Yankee's notice. Prior to that notice, Sterrett was under no obligation to rescind the contract. Yankee has failed to show in what manner it was prejudiced by Sterrett's two month delay. Prejudice being an essential element of an assertion of laches, see *Stamato* v. *Quazzo*, 139 Vt. 155, 157, 423 A.2d 1201, 1203 (1980), Yankee's claim must fail.

Yankee's third claim is that the court erred in awarding Sterrett $3,154.26 for costs it incurred in refinishing the bowling lanes and repairing and replacing bowling pins. Yankee claims that the bowling lanes had been refinished shortly before Sterrett took possession, and that by refinishing the lanes in the summer of 1978, Sterrett was merely restoring the status quo. Further, the repair and replacement of bowling pins is said to have been merely normal maintenance.

■ Where rescission of a contract is directed, the rescinding party must, so far as possible, restore the status quo. *Economou* v. *Economou*, 136 Vt. 611, 620, 399 A.2d 496, 501 (1979); *Smith* v. *Munro*, 134 Vt. 417, 420, 365 A.2d 259, 262 (1976). Sterrett's refinishing of the bowling lanes served to put Yankee in its original position, and so the trial court's award of damages to Sterrett for this item was in error. The record does not indicate the condition of the bowling pins at the time Sterrett took possession of the bowling alley. Thus, it is not possible to determine whether the award for this item served to restore the status quo. Because Sterrett carries the burden of proof as to its damages, this damage claim must also fail.

■ Finally, Yankee claims that the court erroneously computed the prejudgment interest because it concluded that the 1979 amendment to 9 V.S.A. § 41, raising the legal rate of interest to 12%, took effect on April 1, 1979. That amendment took effect July 1, 1979. *Hall* v. *Miller*, 143 Vt. 135, 146-47, 465 A.2d 222, 228 (1983). Therefore, the computation of prejudgment interest was in error.

Sterrett's request for attorney's fees is denied. Costs are to be taxed in accordance with V.R.A.P. 39.

*The trial court's award of $3,154.26 for reimbursement of expenses incurred by appellee is reversed, the cause is remanded for recomputation of interest, and the judgment is affirmed in all other respects.*