ANDERSON v. BUCK ET AL.

1. **Vendor and Vendee:** EXCHANGE OF PROPERTY: FRAUDULENT REPRESENTATIONS AND PRACTICES AS TO TITLE: RELIEF IN EQUITY: INNOCENT PURCHASER: BURDEN OF PROOF. Plaintiff owned certain city property, and defendant certain land, and plaintiff, in exchange for a deed to him of the land, paid defendant $500, and conveyed the city property to defendant's wife. Plaintiff was induced to make the exchange by representations of defendant that he had an unquestioned title to the land, as shown by an abstract which he exhibited to plaintiff, whereby it appeared that defendant's title was perfect. But there was another chain of title not shown by the abstract, of which defendant knew, but which he concealed from plaintiff, and which, as against defendant, probably vested the equitable title in others. Defendant agreed to convey the land by regular warranty deed, but by artifice he imposed upon plaintiff a deed which conveyed only his interest in the land. *Held* that plaintiff was entitled in equity to have the conveyances rescinded, and to judgment against defendant for the $500 boot money, without establishing to a certainty that he could not maintain the title conveyed to him. Also, that defendant's wife could not object to such relief on the ground that the city property had been conveyed to her in satisfaction of a debt which her husband owed her, unless she showed that she had surrendered her security for the alleged debt.

*Appeal from Polk Circuit Court.*

WEDNESDAY, JUNE 10.

THIS is an action in equity, brought by plaintiff to cancel and set aside a deed, by which he conveyed certain real estate in the city of Des Moines to defendant Amy A. Buck, and to recover $500, which he paid defendant C. M. Buck in the same transaction in which said deed was given. The ground on which relief is demanded is that certain frauds were perpetrated on plaintiff in the transaction, by defendant C. M. Buck, he being the party with whom plaintiff dealt. Plaintiff had judgment in the circuit court, and defendants appeal.

*Baylies & Baylies*, for appellants.

*William Kennedy*, for appellee.

REED, J.—I. The transaction out of which this controversy arose was an exchange of property, in which plaintiff gave the city property in question, and $500, for 320 acres of land in Guthrie county. Plaintiff conveyed the city property to defendant Amy A. Buck, who is the wife of the other defendant, but the contract was made with defendant C. M. Buck. The substance of plaintiff's complaint is that said Buck, during the negotiations for the exchange, falsely and fraudulently represented to him that he was the owner of the Guthrie county lands, and had a perfect title to them, and that, for the purpose of deceiving him with reference to the state of the title, he exhibited to him a paper which purported to be an abstract of the title to said land, and which he represented was a true abstract of said title, and which showed that said Buck was vested with a clear title thereto, and that he promised and agreed that in case plaintiff would make the exchange he would convey said lands to him by a deed of general warranty, and that, relying on these representations and promises, he was induced to enter into the contract, and make the conveyance of the city property, and pay to defendant C. M. Buck the sum of $500, and receive from him, as consideration thereof, a conveyance of said lands; but that he has since ascertained that defendant was not the owner of said land, and that the pretended abstract of title shown him by defendant was not a true abstract of the title to the land, and did not show the real state of the title thereto, and that the conveyance of said lands executed to him by defendants was not a conveyance thereof with general warranty, but was a conveyance merely of such right, title and interest in the land as said C. M. Buck then had. These allegations of fraud are all denied by the defendants in their answers.

The evidence bearing on the question whether defendant C. M. Buck made the representation with reference to the title to the land which are attributed to him, and whether they were false, and known by him to be false, and whether he deceived and misled the defendant as to the character of

.the conveyance which he delivered to him, is voluminous, and much of it quite contradictory, and we do not deem it necessary to set it out in detail, but content ourselves with stating the ultimate facts which we think are proven by it. We are satisfied by the evidence that defendant, during the negotiation, represented to plaintiff that he was the owner of said lands, and that he had a perfect title to them. Also that he exhibited to him a paper which he represented was a true copy of the abstract of the title to the land, and which showed a perfect chain of title from the government of the United States to him. At the same time, there were of record in the office of the recorder of deeds of Guthrie county a number of deeds which purported to convey the lands, but which did not constitute a perfect chain of title to them. We are satisfied, however, that the grantees named in the last of this chain of conveyances are the real owners of the land, unless their title thereto is defeated by the chain of conveyances under which plaintiff now holds. None of these conveyances were shown by the abstract which defendant exhibited; and we are satisfied that defendant then knew of their existence, and that he also knew that the grantees therein were claiming title to the land, but he made no disclosure to the plaintiff with reference either to the deeds or this claim of title.

Defendant, in the negotiation, undertook to furnish an abstract of title for plaintiff's information as to the title to the lands, and the one exhibited by him was relied on by plaintiff in making the contract. Defendant also agreed to convey the land to plaintiff, if the exchange should be made, by a deed of general warranty. The deed actually delivered is a conveyance merely of the interest and title which defendant then had in the land, although it contains general covenants of warranty. We are satisfied that plaintiff understood, when he received this deed, that it was an absolute conveyance of the land with general covenants, and we are also satisfied that defendant intended, when he

delivered it, that plaintiff should have this understanding of its character; and that by his management at the time he prevented plaintiff from making such an examination of the instrument as would have revealed its true character to him. Plaintiff made the exchange in the belief that he was obtaining title to the lands, and this belief was induced by the representations which defendant made as to his ownership of it, and by the abstract of title which defendant exhibited during the negotiation. He relied on these representations and the abstract, and made no further examination or inquiry as to the state of the title. That it was defendant's intention to mislead and deceive plaintiff as to the state of the title as shown by the records of the county we entertain no doubt; and that he succeeded in doing this is equally clear. We are also satisfied that he intended to perpetrate a fraud upon him by delivering to him a conveyance of the land materially different in its effect from the deed he contracted to deliver. If plaintiff has been injured by the deception which was practiced upon him, there can be no doubt that equity will afford him relief against the party who perpetrated the fraud. Courts of equity will grant relief whenever one party has committed a cheat or deceit upon another to his injury. Story, Eq. Jur., § § 186, 187.

II. It is insisted by defendant, however, that he was, in fact, the owner of the lands, and that the conveyance of his interest and title therein to plaintiff operated to vest him with the title as certainly as an absolute deed would have done; and consequently, as he obtained all he contracted for, he is in no manner injured by the alleged misrepresentation and deceit. In disposing of this claim it becomes necessary to look into the real state of the title to said lands. We deem it proper to say in the outset, however, that we do not think that plaintiff is required to establish with certainty that his ownership of the land cannot be established as against those who assert an adverse claim to it. He contracted with defendant for the purchase of the land, and paid.

him a fair price for it, and defendant agreed to give him a conveyance of the land. If he had performed his undertaking in this respect, plaintiff would have held the land against the parties who now claim it adversely to him, for he had no notice of their outstanding equities. But, instead of performing his agreement, he executed, and, by fraud, induced plaintiff to accept a conveyance under which he took the land subject to any equity with which it was charged in his hands. Under these circumstances equity will rescind the contract between the parties, and restore plaintiff to his former rights, if it is made to appear that there were outstanding equities at the time of the conveyance, against which it is reasonably doubtful whether the title conveyed to him can be maintained.

The land was entered from the United States in 1856 by one James B. Welch, who in 1882 conveyed it by quit-claim to one E. H. Long. Afterwards Long conveyed it by special warranty deed to one Ira P. Wetmore, and he conveyed it by a general warranty deed to defendant C. M. Buck. In 1862 Welch sold the land to Lemuel E. Jefferson. At the time he gave the quit-claim to Long, however, there was no conveyance of the land of record in Guthrie county from him to Jefferson, or any other person, and there is no competent evidence that he ever executed a conveyance of it to Jefferson. The fact of a sale by him to Jefferson, however, is established by competent evidence. It is shown, then, that Jefferson became the owner of the land in 1862. It is also shown that he was afterwards divested of one quarter section, by a sale thereof on execution issued on a judgment against him, and that he sold and conveyed the other quarter section to W. W. Jefferson. The person to whom the sheriff's deed was executed and W. W. Jefferson have sold and conveyed the land to other parties, and subsequent grantees under these conveyances are now asserting title to it. It is manifest, therefore, that the question whether plaintiff can hold the land as against these parties depends on whether either of the parties, between him

and Welch, through whom the title passed, was an innocent purchaser for value and without notice. It is very clear that Long was not such a purchaser. The conveyance to him was a mere quit-claim, and it is shown that he paid no consideration for the land, and that he was informed by Welch, at the time the quit-claim was given, of the prior sale to Jefferson. He took no interest, then, which he could have maintained as against the parties who held under Jefferson. Wetmore and Buck were examined as witnesses, and each testified that when he purchased the land he had no knowledge of the sale by Welch to Jefferson, or of the adverse claim asserted by the persons who hold under Jefferson. We have to say, however, that we are not convinced of the truth of these statements. Wetmore had formerly acted as agent for the parties in the payment of the taxes on the land. It was sold at one time for delinquent taxes, and he was the purchaser, and they redeemed it from the sale. Some of the deeds through which they claim title were of record, and he knew that fact, and we are satisfied, also, that he knew the parties claimed title to the land under these deeds.

If defendant Buck was an innocent purchaser, or felt any confidence that he could hold the land, there was no reason why he should hesitate to execute to plaintiff a conveyance such as he agreed to give him. He gained no immediate advantage in the transaction with plaintiff by giving him a conveyance of his title and interest in the land rather than an absolute deed. He must have been influenced in doing this, however, by some motive; and it is hardly to be presumed that he was moved to violate his contract simply by a desire to overreach or deceive the man with whom he was dealing, while he derived no advantage from the act. We prefer rather to believe that he was influenced by some other motive than this. And the reasonable explanation of his conduct is that he knew that neither he nor Wetmore was an innocent purchaser of the land, and that if he gave an absolute conveyance to plaintiff he would subject himself to the penalties

prescribed by the statute (Code, § 4074) for the crime of executing a conveyance of real estate with intent to defraud a prior purchaser, and that he preferred to violate his agreement rather than to take the risk attending the commission of that crime. We think, therefore, that it is exceedingly doubtful whether plaintiff can hold the land as against the parties who make claim to it under Jefferson; and that, for that reason, he is entitled to a rescission of the contract.

III. The city property was conveyed by plaintiff to Amy A. Buck at the request of her husband, and defendants both testified that this was done in satisfaction of a debt which he was owing her. And they claim that she is in the position of an innocent purchaser of the property, and that her title ought not to be disturbed, whatever may be the merits of the controversy between plaintiff and C. M. Buck. It is not shown, however, that she relinquished any security which she may have held for said debt, or that she surrendered any evidence of the debt, or that she parted with anything of value in the transaction. It may be that, as between her and her husband, the transaction is valid; but we are very clear that she did not acquire an interest in the property superior to plaintiff's equity therein. The burden is upon her to show that she is a purchaser for value, and this she has not done. *Throckmorton v. Rider*, 42 Iowa, 84; *Sillyman v. King*, 36 Id., 207; *Kitteridge v. Chapman*, Id., 348; *Falconbury v. McIlravy*, Id., 488.

We think the judgment of the circuit court is right, and it will be

AFFIRMED.