W. A. CAMPBELL, Appellant, v. MARY E. SPEARS AND E. D. SPEARS.

Exchange of Properties: TAXATION: SALE OF LAND: TITLE. A
1   sale of public land for taxes assessed prior to the issuance of patent conveys no title to the purchaser.

Fraud: CONVEYANCE OF LAND: EVIDENCE. In an action to rescind
2   a contract for the exchange of lands, the evidence is held to show that defendant's statements that the title was good were false, made with intent to deceive and were relied upon by plaintiff.

Fraud: LACHES: EVIDENCE. In an action to rescind a contract
3   for the exchange of lands on the ground of fraud, the evidence
    is considered and it is held under all circumstances that plain-
    tiff was not guilty of laches in bringing his action and that
    the same was not barred.

Possession: DISTURBANCE OF. In an action to set aside a deed on
4   the ground of fraud and failure of title, where it appears that
    plaintiff never took actual possession, the fact that his posses-
    sion was never disturbed is no defense.

Misjoinder. Misjoinder of causes of action not taken advantage of
5   by motion to strike is waived.

Accounting. In an action to set aside an exchange of properties
6   on the ground of fraud, where a rescission is decreed, an ac-
    counting of improvements, rents, profits and expenses may be
    had and such judgment rendered in favor of the party entitled
    thereto as will place them *in statu q uo.*

*Appeal from Wright District Court.*—HON. S. M. WEAVER,
                    Judge.

MONDAY, MAY 25, 1903. .

SUIT to rescind a contract under which the parties
exchanged properties. Upon hearing, the petition was
dismissed, and plaintiff appeals.—*Reversed.*

*Nagle & Nagle* for appellant.

*B. P. Birdsall* and *S. Flynn* for appellees.

LADD, J.—On April 2, 1895, the plaintiff traded an
acre of land, on which was a residence and barn, and a
cow, three pigs, and twelve chickens, to E. D. Spears, for
a quarter section of land in South Dakota. Plaintiff's
realty was incumbered for $700, and worth about $1,500,
and the land had a value of $800. The residence property
was conveyed to Mary E. Spears, who deeded the land to
plaintiff. The record puts it beyond question that she had
no title to the land, and for this reason none
passed under her deed to plaintiff. An ab-

1. TAXATION:
sale of land:
title.

stract brought down to February, 1893, was exhibited to plaintiff, from which it appeared that one Schatunovsky entered the land and obtained final pre-emption receipt in 1883; that he conveyed it by warranty deed to McDonald June 4, 1884,—"except taxes for 1883 amounting to $15.44 and a contest before United States land office, Mitchell, S. D., which said Moses Schatunovsky does not warrant against"; that patent issued to George A. Rogers June 25, 1890; that the county treasurer executed a tax deed to M. H. Rowley in 1888, and another in 1892; that Rowley conveyed the land to defendant E. D. Spears in 1892; that in February, 1893, he transferred it to Caffrey. The evidence shows that the entry of Schatunovsky was canceled by the Land Department in 1886, and that the tax deeds were based on assessments and levies made in the years 1884 and 1887, long before title passed from the United States under the patent to George A. Rogers. As the lands were not then taxable, the deeds were void (*Reynolds v. Plymouth Co.*, 55 Iowa, 90; *Moriarty v. Boone Co.*, 39 Iowa, 634; *Duncan v. Newcomer*, 9 S. D. 375 (69 N. W. Rep. 580); *Pitts v. Clay*, (C. C.) 27 Fed. Rep. 635. And the deed of Caffrey to Mary E. Spears, and of her to plaintiff, passed no title.

II. The evidence has convinced us that E. D. Spears induced Campbell to take the land by knowingly misrepresenting the title. Campbell appears to have been un-

2. FRAUD: conveyance of land: evidence.

learned and not much accustomed to business transactions. The abstract, to his comprehension, was Greek. He relied on Spears' assertion that the title was good. His testimony that such representation was made is confirmed by Donly, a witness called by defendants. Spears admits saying he believed the title good, but insists that he added that he was no abstract reader, and would let him (Campbell) have the title as he got it. As he caused his wife to execute a warranty deed to Cambpell, assuring the title as plaintiff

claims he represented, we are inclined to accept Campbell's account of the transaction. They agreed to submit the abstract to Donly, and, upon doing so, were advised by him that, though not pretending to be an authority on abstracts, he believed it was defective because of the patent to Rogers. In the face of this, Spears stoutly asserted the title was good, and afterwards saw Donly privately and chided him for what he had said, as it might break up the trade, and requested him to remain quiet— let the exchange be made—and he would make it "all right with him." Though the proposition was not accepted, Campbell did not return. As the abstract did not disclose title in either of defendants, and Donly indicated a fatal defect in that of Caffrey, on what did Campbell rely, if not on Spears' representations? The bare suggestion, without support in the record, of defendant's financial responsibility to comply with the covenants of the deed, does not answer this inquiry. Spears represented the title good, and Campbell was foolish enough to accept his word as against Donly and anything he may have been able to read in the pretended abstract. That Spears knew his statements were false needs no other proof than his attempt to suppress information by Donly, with a price on his silence. See *Anderson v. Buck*, 66 Iowa, 490; *Ballou v. Lucas*, 59 Iowa, 22. But such knowledge is not essential to a rescission in a case like this. *Smith v. Bricker*, 86 Iowa, 285.

III. The delay in bringing suit for more than five years ought not, under the circumstances, deprive plaintiff of his remedy. Undoubtedly, as contended, he 3. FRAUD: was bound to rescind within a reasonable laches: evidence. time after the fraud of defendant was discovered, or might have been discovered by the exercise of ordinary diligence. When was that? In determining this question, we are to begin the inquiry with the assumption

of the fact, as found, that Campbell, on receipt of his deed, was satisfied with the title conveyed. What happened thereafter to arouse his suspicions? In April or May of the same year, Spears claims that, at Campbell's request, he submitted the abstract to two different lawyers for examination; that each advised that nothing was wrong with the title; and that he so reported to Campbell. Of course, the statement is equivocal, as it is not inconsistent with ownership of Rogers, but it was calculated to lull plaintiff into a more perfect sense of security. During the same season plaintiff went to South Dakota to look at the land, and while there his confidence in Spears was further confirmed by being informed by the person who, as county treasuer, had conveyed the land by tax deed to Rowley, that "the title was all right." If upon his return he said to Spears and wife that the title was bad, as they claim, they certainly convinced him to the contrary, for thereafter no question was raised until December, 1899. At that time he employed an attorney at Plankington, S. D., to examine the abstract, and was advised that "the title of the land seemed to be in George A. Rogers." Shortly afterwards McIntyre, to whose father he had executed a mortgage on the land in 1886, came to Eagle Grove, and, owing to a remark by Campbell that "something in the abstract did not appear just right, but, in his opinion, the title was all right;" persuaded him to consult an attorney. They called upon counsel for appellant, who advised Campbell to go to South Dakota and make a thorough investigation. He did so, copying the records, and, submitted the result to said counsel in September, 1900. Immediately following this, demand for the return of the property was made, and upon refusal this suit begun. Certainly nothing occurred subsequent to the trade, prior to December, 1899, to arouse the suspicions of a prudent man. And from that time on it cannot be said, in view of the character of the information received, the

distance to the land, the investigation necessary, and the fact that the situation of the parties continued unchanged, that the plaintiff did not proceed with ordinary diligence. Under all the circumstances, we are inclined to the opinion that the plaintiff cannot be charged with knowledge of the fraud before December, 1899, and that he was not guilty of laches in not bringing his action to rescind until September of the year following. See *Clapp v. Greenlee*, 100 Iowa, 586.

IV. The suggestion is made that, as plaintiff's possession of the land has not been disturbed, he is not in a situation to complain. Apparently, the line of cases fix-

4. POSSESSION; disturbance of. ing the time when a cause of action accrues for breach of the covenants contained in a warranty deed is relied on. *Foshay v. Shafer*, 116 Iowa, 302. But the evidence shows affirmatively that plaintiff never went into actual possession of the land, and, as pointed out in the case cited, a right of action for breach of warranty accrued upon the delivery of the deed. This disposes of the question, without determining whether it has any application to a suit for rescission.

Appellee also argues that there was a misjoinder of causes of action. This objection should have been made by motion to strike, and was waived by failure to do so.

5. MISJOINDER. Sections 3547, 3548, Code. The husband of the party making and receiving the conveyances was a proper party. No question is made but that Mary E. Spears is bound by whatever her husband did prior to the exchange of deeds.

V. Notwithstanding the wabbling of plaintiff's counsel on the subject, we discover no difficulty in placing the parties in *statu quo* in decreeing rescission. The deed

6. ACCOUNTING. to plaintiff conveyed nothing, and so there is nothing for him to restore. See *Kelley v. Owens*, 120 Cal. 502 (47 Pac. Rep. 369, 52 Pac. Rep. 797); *McKee v. Eaton*, 26 Kan. 226. But as he has offered to

reconvey, and cause the mortgage to McIntyre to be satisfied, he will be permitted to do so. The defendant has expended $100 for an addition, $75 for sidewalk, $15 for a cave, $10 for seeding down the lawn, $60 in value of trees, $150 in taxes, and $70 in insurance; amounting in all to $480. There was a mortgage of $700 on the property, with $65 accrued interest. March 8, 1898, this mortgage was paid off, and another executed for $750, on which $100 has been paid, and $56 interest. The defendants should then be credited on the loan the $65 accrued interest, with $50 reduction on the principal, together with interest on the old loan from April 2, 1895, to March 28, 1899, at eight per cent., or $223.75. The trial occurred March 8, 1901, and the undisputed evidence shows the rental value of the property to have been $10 per month, or to April 2, 1901, $720. In addition to this, plaintiff should be allowed $37 for the personal property. Balancing accounts results in $117.75 in the defendants' favor. That such an accounting is appropriate in an action for rescission ought not to be questioned. In Kerr on Fraud & Mistake it is said: "The terms on which a reconveyance will be ordered are the repayment of the purchase moneys, and all sums paid out in improvements and repairs of a permanent and substantial nature, by which the present value is improved, with interest thereon from the time when they were actually disbursed. On the other hand, charges for the deterioration of the property must be set off against the allowances for permanent improvements. The party also in possession must account for all rents received by him, and for all profits, such as moneys arising from the sale of timber or from working mines, with interest thereon from the times of the receipt thereof. He must also pay an occupation rent for such parts of the estate as may have been in his actual possession." See, also, *Chaney v. Coleman*, 77 Tex. Sup. 100 (13 S. W. Rep. 850), where a party was allowed for improvements; *Higby v. Whittaker*, 8 Ohio, 198; *Porter v.*

*Beattie*, 88 Wis. 22 (59 N. W. Rep. 499), where the defend-
ant was allowed to deduct the net income of the land from
the amount to be refunded to plaintiff.   See, also, *Lurch
v. Holder*, (N. J.)  27  Atl.  Rep.  81;  6  Cyc.  342.   In
both *Clapp v. Greenlee*, 100  Iowa,  586,  and *Smith v.
Bricker*, 86 Iowa, 285, accounts were stated.   In the in-
stant case there was not a controverted item, and therefore
the parties may be placed in *statu quo*.   As defendants
have probably continued in possession since March 8, 1901,
the cause will be remanded for an accounting up to date.
The evidence leaves no doubt but that the property is
ample security for the payment of the existing incum-
brance.   The decree should fix this as an indebtedness of
plaintiff, or else require its satisfaction by him, according
to conditions as they now appear.—REVERSED.

WEAVER, J., took no part.