FRED HAY, Appellant, v. DENVER SAVINGS BANK, Appellee.

## No. 45268.

DECEMBER 10, 1940.

E. E. Collins, for appellant.

Hagemann, Hagemann & Hagemann, for appellee.

HALE, J.—In 1922, and prior thereto, the plaintiff, Fred Hay, was a depositor in the defendant bank. On account of illness in his family, he had moved to Fort Morgan, Colorado, in July 1918, and continued to reside there until July 1928, at which time he returned to Denver, Iowa, his former home. Before plaintiff went to Colorado he rented a safety-deposit box from the defendant bank, and delivered both keys to William Graening, the cashier, who had access to the box until about December 1936; and plaintiff also had a duplicate key, and access to the box at any time after his return in 1928. On March 23, 1920, one H. J. Nevermann and wife executed and delivered to defendant a promissory note for $7,000, bearing 6 percent interest, due in five years after date, and secured by a mortgage covering some garage property and a house and lots belonging to Nevermann in Denver. On April 2, 1921, Nevermann traded the garage property covered by the mortgage for a farm in Howard county, and on April 6, 1921, the defendant bank executed and filed in the recorder's office of Bremer county a partial release

of the Nevermann mortgage, releasing the garage property, but did not endorse or credit any amount on the note and mortgage debt, but permitted the note and mortgage to remain for the full sum of $7,000. On March 2, 1922, William Graening wrote to plaintiff at Fort Morgan, a letter as follows:

"Denver Savings Bank

"Denver, Iowa. March 2nd, 1922.

"Friend Fred:

"I have all your deals closed, Chapin and his wife were in here on the 28th, and the Carpenter deal was closed today; and as Ella was writing me a short time ago, I have secured a $7,-000.00 loan for you at 6%. This loan is signed by H. J. Nevermann, that is Henry Nevermann here in town, and the mortgage covers his farm and also his property here in town, and is abso-, lutely good. Having some fine weather now. Looks as though Spring was not far off. Had a little snow lately and roads are getting soft.

"Fr. Guessend Dein,

"Wm. Graening."

The plaintiff alleges that he did not discover the fraud or concealment of the fraud until about July 10, 1937. He alleges that while the note and mortgage became due and payable March 23, 1925, that fact was wilfully and intentionally concealed from him by reason of the defendant's continuing to pay the interest on the note and mortgage as the same became due and payable. He alleges that he relied upon the defendant and upon defendant's promise to collect the interest and protect the plaintiff, and that he was not advised that an extension of the note and mortgage ought to be made, but that William Graening procured an extension of the time of payment by obtaining an extension thereof until March 23, 1940, and that neither defendant nor Graening at that time advised plaintiff that the mortgage was not a lien on Nevermann's farm, or that a partial release of the mortgage had been executed and filed releasing the garage property, but concealed such fact from plaintiff. Plaintiff alleges that thereby he was deceived and lulled into silence and into the belief that the note and mortgage were secured by a lien on Nevermann's farm and property in Denver, Iowa. Plaintiff

alleges that he did not discover otherwise until about July 7, 1937, when an interest payment fell due and was not paid by the bank to plaintiff, and for the first time he was advised by Nevermann that he had never signed the $7,000 note and mortgage and had never paid any interest thereon, and that they were not secured by a lien on a Nevermann farm, such farm having been disposed of in 1915. Demand was made and refused and suit instituted in September 1937.

Defendant generally denies the allegations of the plaintiff, and alleges constructive knowledge on the part of plaintiff as to the premises covered by the mortgage, that more than five years had elapsed after he acquired such knowledge and that he was barred by the statute of limitations. Defendant alleges that in July 1928, plaintiff returned from Colorado to Bremer county and personally inspected the note, mortgage, and assignment referred to, and that he then acquired actual knowledge of the value of the note and mortgage and of the premises covered by the same, and that he was therefore barred by limitation. Defendant further claims that the note and mortgage had been in the possession of plaintiff, in his safety-deposit box, from May 18, 1922, that he had a key and constant access to the box, and that he was familiar with the contents of the note and mortgage, or, as a reasonably prudent person, should have had knowledge of the note and mortgage and a description of the contents of the note, mortgage, and assignment. Defendant denies that plaintiff can now rescind, and states that he was guilty of laches and has waived any right that he may have had for rescinding the contract and is now estopped.

Trial was had to the court, which found the equities of the case were with the defendant and decree was entered dismissing plaintiff's petition.

Denver, Iowa, is a town of about 500 people. Graening was the cashier of the bank, and there was one assistant. As in many banks located as was this one, the cashier appears to have been in full charge and most of the details of the business were transacted by him. The evidence indicates that plaintiff had full confidence in Graening and that, having some money to invest, he probably relied upon Graening to some extent as to the

value of the investment. Nevermann, who, with his wife, executed the mortgage and note, was a patron of the bank and carried a considerable line of credit, so much so that the bank carried several of his notes without security. Both Graening and Hay were men past middle age. Nevermann and the other two were all old-time acquaintances and friends. It was found by the court, and the evidence shows, that the residence property covered by the mortgage was worth about $6,000, and the garage building from $3,000 to $4,500, in addition to which was the stock of cars and garage equipment. There is no question that Hay accepted the note and security, and the transfer of the fund from his account to the bank was with his consent. The partial release of the Nevermann note and mortgage was made so that Nevermann might make a trade for other land. It is alleged by Graening that a third mortgage was taken on this other Nevermann land which was substituted for the Nevermann property released by the bank, but the evidence does not seem to bear out this statement. Graening testified that Hay was informed of the partial release in 1928, but Hay denies that he acquired knowledge of the release until July 5, 1937, and claims that then, for the first time, he learned that no farm was included in the mortgage. As to the interest alleged to have been paid by the bank on the $7,000 mortgage, the facts show that Nevermann was unable to pay the interest, but that on June 9, 1923, he gave a note therefor for $420, which was turned over to plaintiff and is still unpaid. The interest continued to be paid by Graening or the bank up to March 23, 1936. By its terms the $7,000 note became barred by limitation on March 23, 1935. The extension agreement was procured by Graening at the request of Hay on February 4, 1937. Nevermann, who had no very clear recollection of any of the transactions, as a witness at first denied the execution of the note and mortgage, but later admitted that the $7,000 note and mortgage were, as found by the trial court, at the time of execution a valid note and mortgage and were such at the time of the transfer to Hay. While it is true that interest payments were advanced by the bank or by Graening, yet this does not necessarily indicate fraud, for it is shown that Nevermann himself, for a part of the time, was transacting considerable business with the bank and had a

fair line of credit. The claim made by plaintiff that the note and mortgage were not valid is not borne out by the evidence. The evidence shows that Hay did not see the note, mortgage, or assignment until his return in 1928. At that time, however, he read over the papers, including the description of the mortgage, and thereafter at various times he examined the contents of his safety-deposit box. Also it is apparent from the evidence that Hay, who was an old acquaintance of Nevermann, on various occasions visited with Nevermann as he met him in the town of Denver, where Nevermann, after 1927 or 1928, was the town marshal. In 1936 a change was made in the management of the Denver bank and Graening retired, his place being taken by one Zunkel. Through a conversation with Zunkel, Hay was informed that the $7,000 note was outlawed and he procured Graening to get an extension agreement from Nevermann, but Nevermann denied, and his denial is not controverted by the evidence, that the extension agreement was valid and claimed that he signed it without knowledge of its contents. Therefore it was the conclusion of the trial court that the $7,000 note was barred on March 23, 1935.

■■ There can be little doubt that the plaintiff suffered a legal wrong at the hands of Graening, who had failed to inform him of the prior release and who had informed him that the mortgage included a farm. This leaves for determination the one question whether, at the institution of this action, plaintiff's claim was barred by the statute of limitations. Code, 1935, section 11010, provides:

"In actions for relief on the ground of fraud or mistake, and those for trespass to property, the cause of action shall not be deemed to have accrued until the fraud, mistake, or trespass complained of shall have been discovered by the party aggrieved."

The trial court held that the discovery referred to in this section does not mean actual discovery, but the time it might have been discovered by ordinary diligence and attention. Citing Nash v. Stevens, 96 Iowa 616, 65 N. W. 825; Clark v. Van

Loon, 108 Iowa 250, 79 N. W. 88, 75 Am. St. Rep. 219; Simmons v. Western Life Indemnity Co., 171 Iowa 429, 436, 154 N. W. 166, 168—the rule stated in the Simmons case being:

"The statute begins to run not merely from the actual discovery of the alleged fraud, but from the time when it might have been discovered by the use of the ordinary diligence and attention which the average man employs in the care and conduct of his business affairs."

The plaintiff alleges that this is a case of fraudulent concealment and that where relief is sought on the ground of fraud, if the fraud has been concealed, the statute of limitations will not commence to run in favor of the defendant until the discovery of the fraud and cannot prevail as a defense if action is commenced within a reasonable time after such discovery. He also alleges that the burden of proof is upon the defendant to show that the plaintiff had knowledge of the fraud more than five years before the commencement of the action, and that mere silence on the part of an agent amounts to a fraudulent concealment and his silence is to be regarded as a continuation of the alleged fraud and concealment of plaintiff's cause of action. The contention of the defendant is that where fraud or actual fraudulent concealment has prevented the plaintiff from obtaining knowledge of his cause of action, the statute commences to run only from the time when the same was, or might, by the use of ordinary diligence, have been discovered. Defendant alleges that the burden is on the plaintiff to establish the avoidance of the statute of limitations, and that mere silence does not constitute fraudulent concealment unless it is shown that a fiduciary relationship existed, and that if such relationship exists it affects only the degree of diligence required.

We think the rule in the Simmons case, that the statute is deemed to run from the time the right of action might, by the use of ordinary diligence, have been discovered, has always been followed in our decisions. See Cress v. Ivens, 155 Iowa 17, 134 N. W. 869; Wilder v. Secor, 72 Iowa 161, 33 N. W. 448, 2 Am. St. Rep. 236; Bradford v. McCormick, 71 Iowa 129, 32 N. W. 93; Buhman v. Oltrogge, 229 Iowa 449, 294 N. W. 788. And this rule we think applies to cases of fraudulent concealment. While there may be some doubt as to whether there was actual

fraudulent concealment in the case at bar, since the only facts which would support such theory relate to the payment of interest by the bank or by Graening, we doubt very much that such payment of interest would, under the circumstances, be considered fraudulent. It must be remembered that Nevermann and the plaintiff were both clients, and that Nevermann's recollection of the transaction is very hazy; also, that it does not necessarily indicate fraud for the bank to look after such matters for its customers. We need not stop to consider whether a confidential or fiduciary relationship existed, since the plaintiff in 1928, on his return, not only had access to the papers in the deposit box but did actually examine them, as is shown by the uncontradicted evidence. It is also uncontradicted that the mortgage and partial release were matters of public record, recorded in Waverly, where Hay has lived ever since his return in 1928. The plaintiff had the papers in his possession, and under examination in 1928, yet he claims that he did not discover the defects of which he complains until 1937. It is a rule supported by many decisions in this state that if the contents of an instrument reveal the existence of fraud, or put any person reading the same on inquiry, the recording of such instrument is notice to all the world, and this applies both to residents and nonresidents. See Bristow v. Lange, 221 Iowa 904, 266 N. W. 808, and the cases cited therein. It seems to us that anyone with ordinary diligence must have discovered the fraud. The plaintiff was a man who was not inexperienced in business, nor was he unintelligent. From the first he seems to have been extremely careless as to the investment. If in fact he made no inquiry as to the location of the farm, its size, the kind or location of the property in Denver, its value, or any other details concerning it, he was more negligent than the ordinary man and guilty of greater negligence than would ordinarily be attributed to a man of his experience and business ability. The plaintiff was fully aware that Nevermann had failed in the payment of interest; at least, at one time he accepted a $420 note for interest, which was never paid but about which plaintiff seems to have had no misgivings, which is certainly contrary to the usual practice of men in business transactions. He examined the papers in the safety-deposit box about July 15, 1928, and

was able to discover that the assignment was not recorded. It was also apparent at the time of such examination that the principal note of $7,000 was past due three years, and the $420 interest note, due on demand, was delinquent and no interest had been paid on it. This would put the ordinary man, acquainted in any degree with business transactions, on inquiry, aside from the record notice. The only explanation we can conceive as to the plaintiff's actions at that time is that he believed that Nevermann himself would eventually pay the note, and that he relied upon Nevermann rather than upon the security of the mortgage. Other facts are shown by the record which tend to negative the idea of any lack of knowledge on the part of plaintiff. He lived at Waverly, about ten miles from Denver, and, according to his testimony, he went to Denver about once a month, continued to do business at the bank, still kept his papers in the safety-deposit box and did examine those papers at different times, and they were all in his possession in the safety-deposit box until July 1937. He visited with Nevermann from time to time as he met him. It seems incredible that he failed to make any inquiry during all this period as to the failure to pay interest, as to the farm, or any of the details in relation to it. We think the fact of lack of diligence on the part of plaintiff is fully shown, regardless of the question of burden of proof, since there could have been no fraudulent concealment after July 1928. We think, however, that even in a case of fraudulent concealment under facts such as we have in the present case, the burden would not be upon the defendant, but rather upon the plaintiff to establish the avoidance of the statute of limitations, and that mere silence would not constitute fraudulent concealment except on a showing of fiduciary relationship. See Van Wechel v. Van Wechel, 178 Iowa 491, 159 N. W. 1039; Gamet v. Haas, 165 Iowa 565, 146 N. W. 465; Conklin v. Towne, 204 Iowa 916, 216 N. W. 264; City of Carroll v. Arts, 225 Iowa 487, 280 N. W. 869, and cases therein cited; McGrath v. Dougherty, 224 Iowa 216, 275 N. W. 466; Hodgson v. Keppel, 211 Iowa 795, 804, 232 N. W. 725, 728. The case of Conklin v. Towne, supra, involved the alleged fraudulent sale of stock, where, to avoid the plea of the statute of limitations, there was a charge of fraud-

ulent concealment. The court there states (at page 920 of 204 Iowa, 216 N. W. at page 266):

"The rule established in this state is that, if the defendant has, by fraud or actual fraudulent concealment, prevented the plaintiff from obtaining knowledge of his cause of action, the statute of limitations commences to run only from the time the same was or might, by the use of proper diligence, have been discovered." And the court further says: "To avoid the plea of the statute of limitations, it was incumbent upon him to allege and prove that he was prevented by the fraudulent conduct or concealment of the cause of action from sooner commencing same."

The case further holds, under the authorities, that mere silence would not constitute fraudulent concealment of the cause of action.

Defendant contends that the proof is insufficient to show actual fraud on the part of Graening, since the record shows that Hay was not misled in respect to the security on the Nevermann note. This, however, we do not need to consider since we think it is clearly shown by the evidence that as early as July 1928 plaintiff either had full knowledge of the entire transaction or such information as would put him on inquiry.

Plaintiff seeks to rescind the contract, but he must do so within a reasonable time after discovery, or after he should, by the exercise of ordinary diligence, have made the discovery. If he fails so to do he would be guilty of laches. The rule is stated in McNair v. Sockriter, 199 Iowa 1176, 1181, 201 N. W. 102, 104:

"Where a party seeks to rescind a contract on the ground of fraud or mistake, he must do so within a reasonable time after the discovery thereof, or after he should, in the exercise of ordinary diligence, have made the discovery."

See also Clapp v. Greenlee, 100 Iowa 586, 69 N. W. 1049; Campbell v. Spears, 120 Iowa 670, 94 N. W. 1126; Strothers v. Leigh, 151 Iowa 214, 130 N. W. 1019; Brechwald v. Small, 180 Iowa 22, 161 N. W. 20, all cited in the McNair case.

The evidence shows that any attempt at rescission was delayed by the plaintiff after knowing of the facts, or after he should, in the exercise of ordinary diligence, have known such

facts. He is in no position now to place the defendant in statu quo. Such security as the mortgage carried has been lost; there is, at least, considerable doubt as to the validity of the extension agreement which is alleged by Nevermann to have been obtained by fraud and misrepresentation; and the plaintiff has in no way acted promptly. The delay was such that it worked a disadvantage to the defendant.

In the case of State Bank v. Brown, 142 Iowa 190, 198, 119 N. W. 81, 84, 134 Am. St. Rep. 412, the court said:

"It is an universal rule that, where one is induced to purchase property by fraud and deceit, he must, within a reasonable time after discovering the fraud, rescind the contract, and place the other party in statu quo. In other words, he has an election after discovering the fraud or after the means of knowledge are at hand to treat the contract as valid or to rescind, and, if he fails to act promptly and to rescind, he will be held to have waived his right to do so."

It seems to us that the plaintiff, having failed to act with reasonable promptness, would be deemed to have waived any irregularity or fraudulent acts of the defendant's cashier, and by retaining the property he elected to keep it. He would therefore be estopped at this late date to exercise any right of rescission, if ever such right he had. Barnes v. Century Sav. Bk., 165 Iowa 141, 173, 144 N. W. 367, 380; Moore v. Howe, 115 Iowa 62, 87 N. W. 750; German Sav. Bk. v. Des Moines Nat. Bk., 122 Iowa 737, 98 N. W. 606; Bank v. Brown, supra.

We are convinced that plaintiff's cause of action is barred by the statute of limitations, and that the decree of the district court so holding is correct. The cause is, therefore, affirmed.— Affirmed.

RICHARDS, C. J., and MITCHELL, STIGER, HAMILTON, BLISS, and MILLER, JJ., concur.

SAGER, J., takes no part.