# IN THE COURT OF APPEALS OF IOWA

No. 13-1713
Filed October 15, 2014

**JEANNIE SCHLICHTE,**
        Plaintiff-Appellant,

**vs.**

**WILLIAM SCHLICHTE, Individually
and as Executor of the ESTATE OF
GREGORY SCHLICHTE, DENNIS
SCHLICHTE, JEROME SCHLICHTE,
JOYCE LUDWIGS, and CINDY
BERNER-SCHLICHTE,**
        Defendants-Appellees.

_____

Appeal from the Iowa District Court for Plymouth County, Duane E. Hoffmeyer, Judge.

Plaintiff appeals from an adverse summary judgment ruling dismissing her fraudulent conveyance action. **AFFIRMED.**

Jay E. Denne of Munger, Reinschmidt & Denne, L.L.P., Sioux City, and Judy L. Freking, of Judy L. Freking, P.C., Le Mars, for appellant.

Michael W. Ellwanger of Rawlings, Ellwanger, Jacobs, Morhauser & Nelson, L.L.P., Sioux City, and Craig R. Bauerly of Trotzig & Bauerly, P.L.C., Le Mars, for appellees.

Heard by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

Jeannie Schlichte filed a fraudulent conveyance action against her father's estate and her siblings, to whom her father transferred certain farmland prior to his death. On cross-motions for summary judgment, the district court held Jeannie's fraudulent conveyance action was barred by the statute of limitations and otherwise failed as a matter of law. After Jeannie's application for interlocutory review of that ruling was denied, Jeannie voluntarily dismissed the remaining count of her petition and timely appealed from the final judgment.

I.

In June 2003, Gregory Schlichte, Jeannie's father, was charged with sexual abuse of his seven-year-old granddaughter, Jeannie's niece. Contemporaneously, Jeannie revealed Gregory had sexually abused her during a large portion of her life. In January 2004, Gregory pleaded guilty to five counts of lascivious acts with a child arising out of his abuse of his granddaughter. Gregory was sentenced to a term of imprisonment not to exceed twenty-five years. In June 2004, the district court reconsidered Gregory's sentence and placed him on probation. On December 3, 2004, a report of violations was filed against Gregory, and on December 28, Gregory's probation was revoked. In June 2005, the district court again reconsidered Gregory's sentence and placed him on five years' probation. Gregory discharged that probation. He died in 2010.

After the State had filed its report of violations but prior to the probation revocation, Gregory and his wife Alice executed three warranty deeds conveying

their farmland in equal shares to their six children, including Jeannie and the defendants in this case.[1] Gregory and Alice retained a life estate in the transferred property. Gregory and Alice had other assets after the transfer, including receivables from farm rents, cash, a vehicle, personal property, and farm equipment.

In March 2011, Jeannie filed a damages suit against Gregory's estate arising out of Gregory's alleged abuse of her. The facts and circumstances giving rise to that suit are set forth in *Schlichte v. Schlichte*, No. 12-0506, 2013 WL 264426 (Iowa Ct. App. Jan. 24, 2013). As relevant here, in that case our court held that some of Jeannie's claims against her father's estate were barred by the statute of limitations or otherwise failed as a matter of law. However, our court held that Jeannie could pursue her claims of assault and battery and intentional infliction of emotional distress arising out of Gregory's conduct in the two years preceding the filing of that suit.

In May 2011, shortly after filing her damages suit against Gregory's estate, Jeannie filed this suit. In her petition, Jeannie alleged that the 2004 transfer of farmland was done with the actual intent to hinder, delay, and defraud Gregory's creditors. Specifically, Jeannie contended the transfer was made to defraud Jeannie and other victims of Gregory's sex abuse, each of whom might have a damages claim against Gregory, as well as the State of Iowa, which might have a claim for restitution and costs in the criminal proceedings.

---

[1] One of the children, Kenneth Schlichte, died in May 2006. His wife, Cindy Berner-Schlichte, is therefore a defendant.

II.

We review the district court's grant of summary judgment for corrections of errors at law. *See Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500 (Iowa 2013). Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The court views the summary judgment record in the light most favorable to the party resisting the motion for summary judgment and "indulge[s] in every legitimate inference that the evidence will bear in an effort to ascertain the existence" of a genuine issue of fact. *See Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). If the summary judgment record shows that the "resisting party has no evidence to factually support an outcome determinative element of that party's claim, the moving party will prevail on summary judgment." *Wilson v. Darr*, 553 N.W.2d 579, 582 (Iowa 1996); *see* Iowa R. Civ. P. 1.981(3). In addition, summary judgment is correctly granted where the only issue to be decided is what legal consequences follow from otherwise undisputed facts. *See Emmet Cnty. State Bank v. Reutter*, 439 N.W.2d 651, 653 (Iowa 1989).

A.

We first address the limitations period. Jeannie's fraudulent transfer claim arises under Iowa Code section 684.4(1)(a) (2011) (providing that a "transfer made . . . is fraudulent as to a creditor . . . if the debtor made the transfer . . .

[w]ith actual intent to hinder, delay, or defraud any creditor . . . ."). This cause of action "is extinguished unless . . . brought . . . within five years after the transfer was made . . . or, if later, within one year after the transfer . . . was or could reasonably have been discovered by the claimant." Iowa Code § 684.9(1). There is no dispute that Jeannie's claim was brought more than five years after the transfer was made. Her claim is thus extinguished unless it was brought within one year after the transfer was or could reasonably have been discovered by Jeannie.

The summary judgment record establishes that Jeannie had actual knowledge of the transfer at the time of transfer. Jeannie admits she knew of the transfer, generally. But she contends she did not know the specific details regarding the transfer. In her affidavit in the summary judgment record, Jeannie attested she "thought that the land was put into a corporation or something." Whether Jeannie believed the land was "put into a corporation or something" is not material to the limitations question. *See Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 543 (Iowa 2006) ("A fact is material if it will affect the outcome of the suit, given the applicable law."). The material fact is Jeannie knew the farmland was being transferred from Gregory, the alleged debtor, to another. Knowledge of the debtor's transfer of property is all that is required under section 684.9(1).

Further, even if Jeannie did not know the exact nature of the transaction, she had inquiry notice to investigate further. "[U]nder the discovery rule, the statute of limitations begins to run when the injured party has actual or imputed knowledge of the facts that would support a cause of action." *Rieff v. Evans*, 630

N.W.2d 278, 291 (Iowa 2001). "Knowledge is imputed to a claimant when [s]he gains information sufficient to alert a reasonable person of the need to investigate. As of that date [s]he is on inquiry notice of all facts that would have been disclosed by a reasonably diligent investigation." *K & W Elec., Inc. v. State*, 712 N.W.2d 107, 117 (Iowa 2006). Here, at the time of the transfer, Jeannie knew of one sex abuse case involving her father in addition to her own. She also knew her father may have costs related to his criminal proceeding. She also knew her father and mother transferred assets immediately prior to her father being sent to prison for a second time. These facts alone would have put a reasonable person on notice.

Finally, the summary judgment record conclusively establishes Jeannie had constructive notice of the transfer. When Gregory and Alice transferred the property in December 2004, they recorded the deeds. Recording these instruments imparted constructive notice of their contents to Jeannie. *See Hay v. Denver Sav. Bank*, 295 N.W. 176, 179-80 (Iowa 1940) ("It is a rule supported by many decisions in this state that if the contents of an instrument reveal the existence of fraud, or put any person reading the same on inquiry, the recording of such instrument is notice to all the world . . . . It seems to us that anyone with ordinary diligence must have discovered the fraud."); *Laird v. Kilbourne*, 30 N.W. 9, 11 (Iowa 1886) (holding fraud is presumed to be discovered when the fraudulent conveyance is recorded). The recording of the deeds thus commenced the limitations period. *See Anderson v. King*, 93 N.W.2d 762, 766 (1958) ("It is settled in this state that due filing and recording of a fraudulent

conveyance constitutes notice not only of the conveyance but of its fraudulent character."). Jeannie cites persuasive authority from another jurisdiction holding to the contrary. We are not at liberty, however, to ignore controlling authority.

Because Jeannie had actual, inquiry, and constructive notice of the transfer at the time it was made in 2004, she was required to bring her suit within five years from that date. She did not, and her claim is extinguished. The district court did not err in granting the defendants' motion for summary judgment on this ground.

B.

Assuming *arguendo* that Jeannie's claim was not untimely filed, the district court also did not err in concluding Jeannie's claim failed as a matter of law. In determining whether a transfer was made with the actual intent to hinder, delay, or defraud any creditor, we look for certain "badges or indicia of fraud." *Generic Farms v. Stensland*, 518 N.W.2d 800, 802 (Iowa Ct. App. 1994). Iowa Code section 684.4 lists these "badges or indicia of fraud," which include:

a. Whether the transfer or obligation was to an insider.
b. Whether the debtor retained possession or control of the property transferred after the transfer.
c. Whether the transfer or obligation was disclosed or concealed.
d. Whether, before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
e. Whether the transfer was of substantially all the debtor's assets.
f. Whether the debtor absconded.
g. Whether the debtor removed or concealed assets.
h. Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
i. Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
j. Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

> k. Whether the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Iowa Code § 684.4(2)(a)-(k). "While a single badge of fraud may in some instances suffice to set aside a transaction, customarily a combination of circumstances is necessary to warrant an inference of fraud." *Graham v. Henry*, 456 N.W.2d 364, 366 (Iowa 1990). "The convergence of several badges or indices may support an inference of fraud, which grows in strength as the badges increase in number." *Textron Fin. Corp. v. Kruger*, 545 N.W.2d 880, 883 (Iowa Ct. App. 1996).

Jeannie contends Gregory's transfer of property to his children, including Jeannie, which occurred five days prior to the revocation of Gregory's probation, was done with the intent to shield Gregory's property from his "creditors," including the State of Iowa and Jeannie. The summary judgment record shows there are some statutory indicia of fraud implicated here, including:

> a. Whether the transfer or obligation was to an insider.
> b. Whether the debtor retained possession or control of the property transferred after the transfer.
>    . . . .
> h. Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

That being stated, we conclude Jeannie has not generated a "genuine" issue of fact. *See Fees v. Mut. Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992) (stating an issue of fact is "genuine" if the evidence would allow a reasonable person to find for the resisting party).

Here, the evidence does not reasonably support a finding that the transfer at issue was a fraudulent transfer. The indicia of fraud identified by Jeannie are nothing more than indicia of an estate planning transaction, which was the identified purpose of the transaction. Gregory and his wife Alice transferred the property to their six children for $1.00 of consideration while keeping a life estate. This transfer was done openly and with the assistance of counsel. The transfer was recorded. Gregory did not become insolvent after the transfer. The fact that Alice's farm property, which was not subject to execution by Gregory's creditors, was also transferred is strong indicia the transfer was not made with the intent to hinder, delay, or defraud Gregory's creditors. Finally, the fact that part of the farmland was transferred to Jeannie seems wholly inconsistent with Jeannie's argument that the property was transferred to shield it from Jeannie.

The district court did not err in concluding Jeannie's claim failed as a matter of law.

III.

We have considered all the parties' arguments, whether explicitly mentioned herein or not. For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**